## DILLARD v. DILLARD.

No. 43703.

Supreme Court of Missouri.

Division No. 1.

April 12, 1954.

Sharon J. Pate, Caruthersville, for appellant.

Ward & Reeves, Caruthersville, for respondent.

DALTON, Judge.

Action in equity to set aside a certain quitclaim deed to described real estate in Wardell, Pemiscot County on the ground

that it was executed in fraud of plaintiff's marital rights. Plaintiff asks that the deed be declared null and void and for a determination of her dower interest in the property. The trial court found that the deed was valid and binding and that defendant was the fee simple owner of the property. Judgment was entered for defendant and plaintiff appealed.

It is admitted by the pleadings that plaintiff is the widow of F. M. Dillard to whom she was married on November 12, 1947, and that she lived with him as his wife until his death on May 21, 1951. On and prior to October 13, 1947, F. M. Dillard was the owner of the real estate described in the quitclaim deed. Defendant Roy Dillard is a son of F. M. Dillard by a former marriage.

Plaintiff's testimony in her case in chief tended to show that in 1947 she was employed as a clerk in a store operated by F. M. Dillard in Wardell; that he was taking her out on dates and they were going "around everywhere"; that, on October 13, 1947, they were not married, but that they were only contemplating marriage. On that date F. M. Dillard and plaintiff, as grantors and purporting to be husband and wife, executed and delivered to defendant Roy Dillard the quitclaim deed in question. The deed was recorded in the Recorder's office of Pemiscot County on the 17th day of October 1947. It recites a consideration of "one dollar and other good and valuable considerations," and, after a detailed description of the property and a reference to it as the "Dillard Business Block in Wardell," the following provisions appear: "The grantor, F. M. Dillard, reserves the rents, use and occupancy of said property for and during the term of his natural life. If the grantor F. M. Dillard predeceases his wife Lela Dillard, then she is to retain the use and possession of the premises used by F. M. Dillard at the time of his death, rent free, for a period of two years after his death." United States revenue stamps in the sum of $5.50 were attached to the deed and cancelled. Plaintiff signed the deed as "Lela Dillard" and the deed was duly acknowledged. The notary public's certificate shows that F. M. Dillard and Lela Dillard, his wife, acknowledged the instrument as their free act and deed.

Defendant offered the Notary Public who took the acknowledgment, Sonny Walker, as a witness. Walker's testimony tended to show that he knew F. M. Dillard and the plaintiff, his wife, and had known plaintiff for some 25 years; that he took the acknowledgment to the deed in question; and that he saw both of the grantors sign it. The deed was signed on a table in the back of the F. M. Dillard store. He thought that some sort of a contract was executed along with it, "there was some other talk there." He could not specifically recall the conversations of the parties, but he said that he read and examined the deed before it was signed. He noticed no secrecy and saw nothing to cast suspicion upon the transaction. To all appearances the deed was signed voluntarily. Defendant may have called him over to the store to take the acknowledgment, he didn't remember. He did not remember the day that plaintiff and Dillard were married, since they were married a long time before he knew it. At the time of signing and acknowledging the deed both Dillard and plaintiff represented themselves as being husband and wife, but he didn't ask for visible evidence. He said that "it was common knowledge they were married," but that he didn't ask for the marriage license. He knew that to all general appearances they were living together as man and wife; and that at the time they were living "in the back end of the store up above there."

Defendant's evidence further tended to show that plaintiff was in possession of the premises at the time of the trial (April 21, 1952) and had been in possession since her husband's death.

In rebuttal, plaintiff testified that she saw Mr. Walker in the office in Dillard's store, "where the papers were signed"; that defendant Roy Dillard had the papers and asked her to sign them; and that F. M. Dillard asked her to sign the deed as Lela Dillard. She did not know whether de-

fendant knew she was not married at that time. She said her name was then Lela Hogan; and that she "stayed nights with" her sister in Wardell. She further testified that, after the death of her husband, she had been appointed and qualified as executrix of his last will and testament. The will was offered and received in evidence without objection. It was dated December 17, 1947. The second provision is, in part, as follows: "I am now the owner of and running and operating a store, restaurant and caferteria in Wardell, Missouri and my beloved wife, Lela Dillard, is working and and helping me run and operate the same, and I hereby will, devise and bequeath to her, my beloved wife, Lela Dillard, any and all of the property of whatever kind, that may be in or about or used in conection with said store, restaurant and caferteria, at the time of death, including all equipment, fixtures, groceries, goods, wares and merchandise and undivided money in the store. And in addition to the above, also all household goods and kitchen furniture and family car. All as her sole and absolute property. Also I desire that in addition she obtain her statutory allowances and also yearly support in such sum as the court deems proper." The remainder of his property was left to plaintiff and defendant and one Cora Thomas (a daughter), "share and share alike."

Appellant contends that the court erred in finding that the deed was a valid conveyance and that appellant has no right, title or interest in the described real estate. Appellant insists that a mere quitclaim deed transfers only such title and interest as the grantor has at the time, and that "plaintiff charged and unquestionably proved fraud."

We must review the record de novo and reach our own conclusions. The burden of proof rested upon appellant to prove the fraud, as alleged. It is well settled that fraud is never presumed but must be proven as an affirmative fact; that the proof must be of such a positive and definite character as to convince the mind of the chancellor; and, if the facts shown are all as consistent with honesty as with fraud, the transaction will be held honest. Further, appellant seeks the cancellation of a deed. Such cancellation requires the exercise of the most extraordinary power of a court of equity, and it ought not be exercised except in a proper case, and the evidence to justify cancellation should be clear, cogent and convincing. Schneider v. Johnson, 357 Mo. 245, 207 S.W.2d 461, 466.

It is alleged in the petition and admitted by the answer that appellant was not lawfully married to F. M. Dillard until November 12, 1947, about a month after the execution of the deed. It is, therefore, apparent that appellant had no inchoate dower or other interest in the described real estate at the time the deed was executed. Appellant's theory apparently is that the purpose, intent and clear result of the conveyance was to wrongfully and unlawfully deprive and defraud her of her prospective lawful marital rights in the described property as the widow of F. M. Dillard. The petition alleged and appellant's testimony tended to show that on October 13, 1947, she was keeping company with F. M. Dillard; and that they were contemplating marriage but there is no evidence that she was not fully advised as to terms of the deed in question or that she did not voluntarily consent and agree to its terms. "Generally, knowledge and consent by one prospective spouse to an antenuptial conveyance by the other prospective spouse frees the transaction of any implication of fraud against the marital rights of the other spouse." 26 Am.Jur. 818, Husband & Wife, Sec. 193. The quitclaim deed in question clearly evidences appellant's knowledge of and consent to the transfer in question to respondent. Further, there is in this record no evidence of actual fraud, or any evidence that the conveyance was intentionally made for the purpose of defeating appellant's prospective marital rights in the property. There is no evidence that the conveyance was without adequate consideration or that it was testamentary in character or made in expectation of impending death. There is

evidence that F. M. Dillard had other property and no evidence that the property in question represented any substantial portion of his property, or materially affected his ability to properly support and maintain appellant. Clearly there was no sufficient evidence of fraud and no facts were shown from which fraud should be inferred. Pollman v. Schaper, 258 Mo. 710, 167 S.W. 953; Noe v. Noe, 359 Mo. 867, 224 S.W.2d 77; Nordquist v. Nordquist, 321 Mo. 1244, 14 S.W.2d 583; Wahl v. Wahl, 357 Mo. 89, 206 S.W.2d 334.

The case of Ott v. Pickard, Mo.Sup., 237 S.W.2d 109, 111, the only authority cited in appellant's brief, is cited as authority for his contention that a quitclaim deed transfers only such title and interest as the grantor has at the time the deed is delivered. It is admitted that F. M. Dillard owned the described real estate prior to the date of the deed and, accordingly, his interest passed by and through the deed, subject only to the reservations therein contained. Appellant did not then have any interest in the property and the question presented by the pleadings is whether or not the conveyance was fraudulent and void as being in fraud of the prospective marital rights of appellant. The Ott case, relied upon by appellant, points out that there are decisions by this court which "permit a quitclaim deed to pass any interest subsequently acquired by the grantor if an intent to convey that interest be disclosed by the instrument." 237 S.W.2d 109, 111. The deed in question shows upon its face that the subsequent rights of appellant in and to the described real estate, as the widow of F. M. Dillard, were designated with particularity, to wit, that "if the grantor F. M. Dillard predeceases his wife Lela Dillard, then she is to retain the use and possession of the premises used by F. M. Dillard at the time of his death, rent free, for a period of two years after his death." The deed clearly expresses an intention to limit appellant's interest in the property as widow of F. M. Dillard to two years of rent-free use and possession after his death. It is enough, however, in view of the record in this case to hold, as we do, that appellant has wholly

failed to prove any fraud; and that the trial court reached a just and proper conclusion in denying relief.

The judgment is affirmed.

All concur.