In the Matter of the ESTATE OF Frank W. MITCHELL, Deceased.

No. 40865.

Missouri Court of Appeals, Eastern District, Division Four.

Dec. 16, 1980.

Chopin & Kennedy, P.C., Francis H. Kennedy, Jr., and Joseph S. McDuffie, St. Louis, for Eugene N. Mitchell.

Gunn & Gunn by Donald Gunn, Jr., and Stein & Seigel by Charles Alan Seigel, St. Louis, for Betty Wilson.

SATZ, Judge.

This appeal arises from a suit to discover assets instituted by Betty Mitchell Wilson (petitioner) as administratrix of the estate of her deceased husband Frank W. Mitchell, Sr., (decedent). Petitioner initiated her ac-

tion in the Probate Court of St. Louis County by filing an affidavit[1] in which she stated that 19 shares of stock in the St. Louis Argus Publishing Company were unlawfully withheld from the estate by Eugene N. Mitchell (respondent), the son of decedent. At some point in the prehearing process, petitioner amended her affidavit to sue not only as administratrix but also "individually as the surviving spouse" of decedent. In answer to interrogatories filed by petitioner, respondent first stated he had received the stock as a gift from decedent. Subsequently, he amended his answers to these interrogatories to state that he had received the stock from decedent "in consideration" for his promise to take an active part in running the Argus Publishing Company. Ultimately, the cause was tried to a jury. The jury returned a verdict in favor of petitioner and found that "the 19 shares of stock in the St. Louis Argus Publishing Company are part of the estate of Frank W. Mitchell, Sr., deceased".

On appeal, respondent first contends the trial court erred in overruling his motions for directed verdict at the close of petitioner's case and at the close of the entire case. We disagree. By presenting evidence in his own case, respondent waived his right to appeal the adverse ruling on his motion for a directed verdict at the close of petitioner's case. *Summers v. Sitze*, 580 S.W.2d 562, 563 (Mo.App.1979); *McCarty v. Donahue*, 545 S.W.2d 359, 360 (Mo.App. 1976). As to respondent's motion for a directed verdict at the close of the entire case, we must and we have reviewed all of the evidence and all reasonable inferences in the light most favorable to petitioner and we must and we have rejected all unfavorable inferences. *Depper v. Nakada*, 558 S.W.2d 192, 194 (Mo.App.1977); *Forbis v. Associated Wholesale Grocer's Inc.*, 513 S.W.2d 760, 763 (Mo.App.1974). No useful

---

1. Discovery of assets is a statutory action. Under the statutory procedure then controlling, the action was initiated by the filing of an affidavit alleging that a person was withholding an asset of the decedent. The court could order this person to appear before it and, if he did not admit the claim stated in the affidavit, he could be examined under oath or required to answer interrogatories. The issues were formed by the interrogatories and their respective answers. Presently, the action is initiated by a verified petition and the ensuing process is governed by our Rules of Civil Procedure. Section 473.340 RSMo 1978.

purpose will be served by a detailed recitation of our marshalling of the evidence and inferences favoring petitioner. Suffice it to say that the evidence more than supports a case properly submissible to a fact finder.

Respondent also asserts several instructional errors. We find one of these assertions to have merit and we reverse. To understand respondent's specific assertion and the bases of our decision, we outline the procedural history of the present action.

 A discovery of assets action, as its name implies, is a search for assets owned by the decedent at his death, and, thus, traditionally in these actions, the ultimate issue is whether title to the assets in question had passed from the decedent to another person prior to the former's death. *E. g., Allmon v. Allmon*, 306 S.W.2d 651 (Mo.App. 1957); *Edlen v. Tweed*, 295 S.W.2d 397 (Mo. App.1956). In this context, the issue of the proper holder of title is considered to be an issue at law rather than equity. *See, Kearney Commercial Bank v. Deiter*, 407 S.W.2d 575, 581 (Mo.App.1966); *In re Petersen's Estate*, 295 S.W.2d 144, 146 (Mo.1956). Historically and by statute this legal issue rightfully may be tried to and resolved by a jury. *See Tygard v. Falor*, 163 Mo. 234, 63 S.W. 672 (1901); *In re Van Fossen*, 13 S.W.2d 1076 (Mo.App.1929); § 473.340 RSMo 1978. Implicit in the traditional procedure is a denial that there was an effective transfer of title from the decedent to another party. The issue of title is framed by the petitioner simply alleging that the decedent held title at his death to certain described property and that this property is being adversely withheld by another person. Section 473.340 RSMo 1978; *See,* § 462.400–462.440 RSMo 1949; *Allmon v. Allmon, supra*. The decedent's legal representative may initiate the action, and, once the initiating petitioner makes a prima facie showing that the decedent owned the property in question at his death, the burden of going forward and the burden of proof shifts to the respondent to show there was an effective transfer of the property from decedent

to him. *See, e. g., Allmon v. Allmon, supra* at 655; *Edlen v. Tweed, supra*. Thus, traditionally but not universally, in a discovery of assets case, the legal representative of the decedent may be the petitioner, and the petitioner may raise the issue of title to the property in question as a matter of law, may demand a jury trial to resolve this issue and may make a submissible case by a prima facie showing of title in the decedent at the time of his death.

 However, apparently because of the facts in the present case, petitioner did not choose to trod this precise procedural path. One of her theories of recovery, the one upon which she unquestionably submitted her cause to the jury, was that decedent transferred the stock to respondent and that transfer was a gift in fraud of petitioner's marital rights. We assume petitioner processed this cause of action as the surviving spouse of decedent rather than as his administratrix, because it is questionable whether as administratrix she has standing to set aside a fraudulent transfer by decedent. *Stierlin v. Teschemacher*, 333 Mo. 1208, 64 S.W.2d 647, 650 (1933); *Kerwin v. Kerwin*, 204 S.W. 922 (Mo.App.1918). In addition, we note that a gift in fraud of marital rights is an equitable cause of action, in which the aggrieved party normally seeks relief in equity rather than at law. *E. g., Edgar v. Fitzpatrick*, 369 S.W.2d 592, 599 (Mo.App.1963) modified on other grounds, 377 S.W.2d 314 (Mo.1964). Admittedly, today the probate divisions of our circuit courts appear to have wide ranging equitable power in probate matters. Section 472.030 RSMo 1978; *In re Myer's Estate*, 376 S.W.2d 219, 224 (Mo.banc 1964). Arguably, then, the discovery of assets process contemplates this substantive cause of action even though it is equitable in nature. *See In re Estate of Lowe*, 519 S.W.2d 373 (Mo.App.1975). Nonetheless, it still remains questionable whether a jury, other than an advisory jury, is the proper fact finder to resolve the ultimate issues raised by this equitable cause.[2] *See, State*

2. Since the discovery of assets proceeding is a creature of statute, the argument has been

made that the legislature can and did provide for a jury trial of equitable issues raised in the

*Bank of Willow Springs v. Lillibridge*, 293 S.W. 116, 118 (Mo.1927); *State ex rel. William v. Sloan*, 574 S.W.2d 421 (Mo.banc 1978); *Edward v. Maples*, 388 S.W.2d 850, 852 (Mo.1965). Neither party has raised or addressed these procedural peculiarities and their possible effect on the substantive issues in this action. For our purposes here, we assume that petitioner, as a surviving spouse, may process the substantive cause of action of a gift in fraud of marital rights by a discovery of assets proceeding and that the issues raised may be properly resolved by a jury.

Against this procedural background, we now turn to respondent's assertion of instructional error. He contends the verdict director for petitioner, Instruction No. 2, was prejudicially erroneous. Petitioner's verdict director was submitted in the disjunctive.[3] It required the jury to find for petitioner if they found either (1) the shares of stock were not sold by decedent to respondent under a valid contract, or, (2) the stock had been a gift from decedent to respondent in fraud of petitioner's marital rights. Under this instruction, the jury could return a verdict for petitioner without finding that the decedent made a transfer intending to defraud the petitioner of her marital rights. A finding of no valid contract for the sale of stock would support a verdict for petitioner. This instruction, respondent argues, improperly eliminates petitioner's burden of proving her cause of action. We agree.

Petitioner's chosen theory of recovery was a gift in fraud of marital rights. Unquestionably, she had the burden of showing a fraudulent intent on the part of decedent. *E. g., In re Estate of LaGarce*, 532 S.W.2d 511, 515 (Mo.App.1975). The first paragraph of the verdict director in this case would have allowed the jury to find for petitioner without finding that she had carried her burden on this issue of intent. A verdict director must tell the jury each ultimate fact which must be determined in order for the jury to return its verdict. *Douglas v. Hoeh*, 595 S.W.2d 434, 437 (Mo.App.1980); *Milliken v. Trianon Hotel Co.*, 364 S.W.2d 71, 74–75 (Mo.App.1962). The omission of the ultimate facts necessary to petitioner's claim made the instruction obviously misleading and confusing. *See Douglas v. Hoeh, supra, R-Way Furniture Co. v. Powers Interiors, Inc.*, 456 S.W.2d 632, 639 (Mo.App.1970).

Petitioner argues that this is a discovery of assets case, and "these shares either belong in the estate ... or they do not". Because respondent justified his possession of the stock on the sole ground that he received them for valid consideration, petitioner reasons she is entitled to a verdict if the jury did not believe this contention. In short, petitioner argues the stock must be returned to the estate if there was a gift in fraud of marital rights or if respondent failed to support his justification for receipt and possession of the stock. Petitioner's argument does not cure the defective verdict director. Simply labeling this action as "discovery of assets case" does not eliminate the requirement that petitioner affirmatively establish the elements of a gift in fraud of marital rights. If this action can be construed as a discovery of assets case, it can be so construed only to the extent that the procedural devices for a

---

proceeding. *See Welsch, L. Equity Jurisdiction in Probate Matters Under the New Code*, 1961 Wash.U.Law Quart. 309, 301 n. 111.

**3.** The instruction reads:
"Your verdict must be for Petitioner if you believe:
First, that Frank W. Mitchell, Sr. did not enter into a valid contract with Eugene N. Mitchell under which the nineteen (19) shares of the St. Louis Argus Publishing Company owned by Frank W. Mitchell, Sr. were sold to the said Eugene N. Mitchell; or

Second, that Frank W. Mitchell, Sr. made a gift of his nineteen (19) shares of stock in the St. Louis Argus Publishing Company to the Respondent, Eugene N. Mitchell; and
Third, that Frank W. Mitchell, Sr. made this gift of his nineteen (19) shares of stock in the St. Louis Argus Publishing Company to Eugene N. Mitchell before his death on June 11, 1970, and did so in fraud of the marital rights of his surviving spouse, the Petitioner, Mrs. Betty Mitchell Wilson, to share in his estate."

discovery of assets were used to process petitioner's substantive cause of action: a gift in fraud of marital rights. Petitioner's choice of this procedural vehicle does not obviate her burden of proving her substantive cause of action. Moreover, the verdict director did not submit alternative consistent theories of recovery. Paragraph First merely hypothesizes the absence of a valid contract to support the transfer of stock. At best, this is simply a general hypothesis which encompasses and includes petitioner's theory of a gift in fraud of marital rights without submitting in this paragraph the required issues of ultimate fact to support this theory.

Petitioner also contends that Paragraph First of this instruction was a proper and required negation of respondent's "affirmative defense". We disagree. Respondent justified his receipt and possession of the stock on the ground that he gave valuable consideration for the stock. If this justification were an affirmative defense, petitioner's verdict director should have incorporated it by requiring the jury to find for petitioner if they believed there was a gift in fraud of marital rights "unless" they believed petitioner was not entitled to recover by reason of respondent's justification. *See generally,* MAI 17.01. This structure and language fastens the appropriate burden of proof on each party and prevents that burden from being improperly shifted. By choosing different language and a different structure for her verdict director, petitioner avoided the burden of proving her chosen claim for relief. Thus, the instruction given was improper even if we were to construe respondent's justification as an affirmative defense. However, we do not choose to so construe respondent's justification; hence, the MAI format of referring to an affirmative defense may not have been appropriate for referring to respondent's justification. His justification is more appropriately characterized as an affirmative converse than as an affirmative defense. An affirmative defense is "a defense resting on facts not necessary to support [petitioner's] case". *Wilson v. Motors Ins. Corp.,* 349 S.W.2d 250, 253 (Mo.App.

1961). It is a defense which, if believed, would justify a recovery for respondent even though petitioner proved all elements of her claim. *See, Bartleman v. Humphrey,* 441 S.W.2d 335, 348 (Mo.1969). An affirmative converse differs. It submits facts which, if believed, would disprove one or more of the essential elements of petitioner's claim. *E. g., Morris v. Klein,* 400 S.W.2d 461, 465 (Mo.App.1966). Respondent's justification fits more comfortably in the latter category. If the jury believed his justification of valuable consideration, they could not believe there was a gift, which is the threshold element of petitioner's claim. Respondent's justification—valuable consideration—is nothing more than an explanatory denial of a gift, and, thus, his justification is properly characterized as an affirmative converse. *See, e. g., Morris v. Klein, supra; see also, General Comments to MAI 33.01.* The instruction offered by petitioner need not have referred to respondent's justification because no specific reference to an affirmative converse need be made in a verdict directing instruction. *Bollman v. Kark Rendering Plant,* 418 S.W.2d 39, 48–49 (Mo.1967). We find petitioner's verdict director, Instruction No. 2, was prejudicially erroneous, and, for this reason we reverse and remand.

We now discuss those issues which may come up again on retrial. First, we agree with respondent that the following instruction was erroneous:

"INSTRUCTION NO. 5

'You are instructed that a surviving spouse has a marital right by law to a portion of his or her deceased spouse's estate and that neither spouse during their lifetime may deprive the other of such marital right by making gifts in fraud of this marital right.

In considering whether Frank W. Mitchell, Sr. made a gift to Eugene N. Mitchell of his nineteen (19) shares of stock to the St. Louis Argus Publishing Company that was in fraud of the marital rights of his wife, Betty Mitchell Wilson, to share in his estate, you are to consider the following factors:

1. Lack of consideration for the transfer;

2. Retention of control by the transferring spouse over the assets transferred after the transfer is made;

3. A disproportion between the value of the assets transferred and the value of the transferring spouse's total estate;

4. Whether the transferring spouse concealed the transfer from his surviving spouse, or at least exhibited a lack of candor in violation of the marital duty;

5. Whether the transferring spouse made the transfer in contemplation of his imminent death.

In determining whether there was involved here a transfer in fraud of marital rights, you need not find that each and every one of the above indicators was present.' "

Admittedly, the factors listed are clearly set out in case law as the factors to be used in determining whether one who has made a gift did so with the intent of defrauding his spouse out of the latter's marital rights. *See, e. g., Nelson v. Nelson,* 512 S.W.2d 455, 459–461 (Mo.App.1974). However, the intent to defraud is only one of two basic elements of a gift in fraud of marital rights. The other element is the existence of a gift. Section 474.150 RSMo 1978, *Nelson v. Nelson, supra* at 459. If there has been no gift, there is no need to determine whether there has been an intent to defraud.

The first factor listed in Instruction 5, lack of consideration, not only indicates the decedent's intent, it also indicates whether there was a gift. Indeed, if there was consideration, then, by definition, there was no gift. *Hull v. Hull,* 591 S.W.2d 376, 380 (Mo.App.1979). However, the language of the instruction does not make it clear that the instruction only applies to the determination of intent and that this determination of intent need be made only after the threshold question of the existence of a gift has been answered in the affirmative. On the contrary, the instruction allows the jury to weigh all of the listed factors to determine whether there has been a transfer in fraud of marital rights. The last paragraph, allowing the jury to find such a transfer without finding all of the factors present, would allow the jury to find that there had been a transfer in fraud of marital rights without first finding a lack of consideration for the transfer. However, if the jury does not find a lack of consideration, i. e., if it finds there was consideration, one of the basic elements of the cause of action, the gift, is missing. *See Hull v. Hull, supra.* Therefore, the instruction is erroneous.

This problem with this instruction is not solved as petitioner suggests by reading it with the respondent's affirmative converse. Respondent's affirmative converse required the jury to find for respondent if they believed the transfer was made for valuable consideration. An instruction which erroneously declares the law is not made acceptable by reading it with a contrary instruction which properly declares the law. *Milliken v. Trianon Hotel Co., supra* at 74; *John O'Brien Boiler Works Co. v. Sievert,* 256 S.W. 555, 557–58 (Mo.App.1923).

An instruction setting out these factors should make it clear that the factors are to be used to determine the intent of the decedent if, but only if, the jury has found the decedent has made a gift. Perhaps the better practice would be to avoid enumerating these factors in any instruction and to have counsel cover them in argument. *Doolin v. Swain,* 524 S.W.2d 877, 881 (Mo. banc 1975).

Respondent also complains that petitioner's burden of proof was not properly defined in the instructions. The burden of proof instruction tracked former MAI 3.01, the standard instruction on burden of proof. Respondent contends former MAI 3.01 should have been modified to require the petitioner to support her claim by proof which was "clear, cogent, and convincing." *See Committee Comments to MAI 3.01; In re Passman's Estate,* 537 S.W.2d 380, 384 (Mo.1976). Admittedly, in equitable actions

sounding in fraud, our courts have required proof by clear, cogent and convincing evidence. *See, Louis v. Andrea*, 338 S.W.2d 96 (Mo.1960). For example, in *Dillard v. Dillard*, 266 S.W.2d 561 (Mo.1954), the Court required a widow to prove fraud by clear, cogent and convincing evidence when she sought to cancel a deed which she claimed was executed in fraud of her marital rights. However, in *Crawford v. Smith*, 470 S.W.2d 529, 533 (Mo.banc 1971), the Court held that the burden of proof in fraud cases tried to a jury should not be greater than in other cases tried to juries. *Id.* at 533. Here, we have a "fraud" case which is equitable in nature, yet was tried to a jury. We must determine whether to adhere to the rule enunciated in *Crawford* or to apply the rule which would generally apply to equitable actions. Apparently, the more stringent standard of proof is required to justify the use of exceptional equitable remedies, such as cancellation of an instrument which effects established legal relationships, (*See Dillard v. Dillard, supra*), or, to prevent injustice in cases which are particularly susceptible to perjury or fraud. 32A CJS, Evidence § 1023. This reasoning is applicable to the present case. Petitioner seeks to have an otherwise effective transfer set aside, a remedy which normally takes the extraordinary powers of a court of equity. Additionally, and with no intent to demean the credibility or weight of petitioner's evidence, we believe that establishing fraudulent intent on the part of a decedent is an issue peculiarly susceptible to manufactured evidence. Thus, on the present facts, we hold that petitioner must support her claim by clear, cogent and convincing evidence.

■ In addition, respondent complains his "defense" was incorrectly defined in the burden of proof instruction. The instruction informed the jury that respondent was required to prove "his defense" that the shares of stock were received "under a valid contract" for sale.[4] Respondent asserts his defense was that the transfer was made for valuable consideration and not, as stated in the instruction, that it occurred under a valid contract for sale. If in the context of this case "contract for sale" is not the legal equivalent of "valuable consideration", respondent failed to demonstrate to us the prejudice worked against him by this lack of legal precision, *Van Dyke v. Major Tractor and Equipment Co.*, 557 S.W.2d 11, 13 (Mo.App.1970). Moreover, the question of whether an instruction is confusing is left to the sound discretion of the trial court, *Deskin v. Brewer*, 590 S.W.2d 392, 401 (Mo. App.1979). On the present record, we are unable to find the court abused its discretion in using the term "contract for sale" instead of "transfer for valuable consideration".

Respondent also complains about the admission of certain evidence. First he complains that part of petitioner's testimony about the value of the stock in question was hearsay. Petitioner testified: "He [the decedent] was very concerned about the children's welfare and education, and said we did not have very much, but most was the stock in the paper." This testimony, respondent argues, was elicited to show the value of the stock was disproportionate to the value of decedent's total assets. Offered for that purpose, petitioner's recitation of decedent's statement was classic hearsay: an out of court statement offered

---

4. This portion of the instruction reads:
"The burden is upon Respondent to cause you to believe the propositions necessary to support his defense that he received nineteen (19) shares of stock in the St. Louis Argus Publishing Company from Frank W. Mitchell, Sr., *under a valid contract for the sale of those shares.*" (Emphasis added).
Respondent also complains this portion of the instruction was improper because it failed to refer by number to the instruction defining his "defense". On retrial, this issue will not arise. Because of a subsequent mod-

ification of former MAI 3.01, it is no longer necessary to specifically refer to the burden of proof on an affirmative defense. *MAI 3.01, Notes on Use* (1979 Revision; effective Jan. 1, 1980). More important, as demonstrated in this opinion, *supra*, defendant's "defense" is an affirmative converse rather than an affirmative defense. It was unnecessary to modify former MAI 3.01 by inserting a specific reference to an affirmative converse. *Restaurant Industries v. Lum's Inc.*, 495 S.W.2d 668, 671 (Mo.App.1973).

to show the truth of the matter stated. *See Still v. Travelers Indemnity Co.*, 374 S.W.2d 95, 102 (Mo.1963); *Giessow v. Litz*, 558 S.W.2d 742, 750 (Mo.App.1977). Petitioner counters that the testimony was offered to show the decedent's state of mind—his intent to provide for his family; and, therefore, petitioner argues, this testimony was a proper exception to the hearsay rule. *See State ex rel. State Highway Commission v. City of St. Louis*, 575 S.W.2d 712, 722 (Mo. App.1978).

From the record, it appears that petitioner had two theories of recovery: (1) the transfer of the stock was invalid because of undue influence, or, (2) the transfer of the stock was invalid because it was a gift in fraud of marital rights. At the time of the testimony in question, both theories were still viable. Evidence of decedent's state of mind to provide for his entire family would be probative and relevant to show that the transfer to respondent alone was a result of undue influence. For this purpose, petitioner's quoted testimony is admissible. However, this testimony tends to negate an intent by decedent to make a gift in fraud of petitioner's marital rights. If decedent's state of mind was to provide for his entire family, in particular petitioner, he never would have made a gift to respondent in the first place. Perhaps, on retrial, petitioner's theories of recovery can be more explicitly defined in order to make the particular relevancy of her proffered evidence readily apparent.

■ Respondent also complains about the admission of financial statements of the Argus Publishing Co., which apparently were offered to establish the value of the stock. Respondent first contends the financial statements were not interpreted by an expert to show the value of the stock at the time of the transfer, and, therefore, these statements were inadmissible. These exhibits are not before us and respondent has offered no explanation why these statements needed the interpretation of experts. The necessity for expert testimony rests in the sound discretion of the trial court. *See, e. g., Yocum v. City Public Service Co.*, 349 S.W.2d 860, 864 (Mo.1961). Without further explanation of the complexity or technical nature of the financial statements, we are unable to say the trial court abused its discretion in admitting them without accompanying expert testimony.

■ Respondent also contends the financial statements were irrelevant and, therefore, were improperly admitted. Respondent correctly notes that the value of the stock, standing alone, is not relevant evidence. Only the stock's proportionate value in relation to the total value of decedent's assets is relevant. *See Nelson v. Nelson*, 512 S.W.2d 455, 461 (Mo.App.1974). A disproportion between these two values indicates an intent to defraud the surviving spouse of his or her marital rights. *Id.* Respondent argues that the value of decedent's assets at the time of the transfer was not established and, therefore, even if the financial statements proved the value of the stock, that value was not relevant evidence because it could not be compared to the total value of decedent's assets. We disagree. There was evidence of the value of decedent's assets at the time of his death, and the time of decedent's death was not so remote from the time of transfer to make the value at death irrelevant to the issue of the value at the time of transfer. The financial statements, thus, were relevant evidence and properly admissible.

Finally, respondent complains that the trial court erred in admitting respondent's original answer to an interrogatory which he later amended. In the interrogatory, petitioner asked respondent from whom he received the stock in question and what consideration he gave for the stock. Respondent's original response was that he received the stock "from [his] father, as a gift". He later amended that answer to show that the transfer had been made for valuable consideration. The trial court admitted the original answer as an admission. Since interrogatories and their answers constitute the pleadings in a discovery of assets case, *Roger's Estate v. Courier*, 429 S.W.2d 258, 263 (Mo.1968); *Dusenberry's Estate v. Stamm*, 255 S.W.2d 57, 59 (Mo.App.1953),

respondent tacitly admits his original answer, the stock was a gift, can be characterized as a statement in an abandoned pleading and, thus, admits the admissibility of his answer is determined by the evidentiary rules governing admissions in abandoned pleadings. Also, respondent apparently has no quarrel with the rule that an admission contained in an abandoned pleading is admissible if it is a statement of fact and was not made by mistake or inadvertence.[5] *DeArmon v. City of St. Louis*, 525 S.W.2d 795, 803 (Mo.App.1975). However, respondent complains that his answer was improperly admitted into evidence because his characterization of the transfer as a gift was a conclusion of law, not a statement of fact. We disagree. The line of demarcation between a statement of fact and a conclusion of law is often blurred. Whether a particular statement is one or the other, may depend on the circumstances. Here, respondent made the statement in issue in response to a question specifically asking about consideration received for the stock. The only reasonable interpretation of his response is that he used the word "gift" as one uses it in common everyday parlance, giving the word its ordinary, accepted meaning. Arguably, in the abstract or in other circumstances, the characterization of a transfer as a gift may be a legal conclusion. Here it was not.

■ Respondent also argues his admission was made by mistake or inadvertence. The facts compel a contrary conclusion. He was specifically asked what consideration he gave for the stock and he consistently characterized the transfer as a gift in his original answers and in answers filed a year later. His amendment that he gave valuable consideration for the stock came over six years later. Hence, we find his original answer was properly admitted into evidence as an admission.

We reverse and remand this cause to the trial court.

SMITH, P. J., and STOCKARD, Special Judge, concur.

---

**5.** The same result could be reached if the answer is analyzed under rules relating to answers to interrogatories. Answers to interrogatories may be used at trial to the extent permitted by the rules of evidence. Rule 57.01(b). Under the rules of evidence, interrogatories and their answers may be introduced into evidence if they contain an admission made by a party to the suit. *Gibson v. Newhouse*, 402 S.W.2d 324, 327 (Mo.1966), *Pyles v. Bos Lines, Inc.*, 427 S.W.2d 790, 792 (Mo.App.1968). There is no indication pre-amendment answers to interrogatories should be treated differently than if there was no amendment at all.