**June WEBER, Plaintiff-Appellant,**

v.

**Joyce KNACKSTEDT, Defendant-Respondent.**

**No. 49017.**

Missouri Court of Appeals,
Eastern District,
Division Four.

March 4, 1986.

Rehearing Denied April 1, 1986.

June Weber, pro se.

Michael B. Stern, St. Louis, for Knack-stedt.

SATZ, Judge.

Plaintiff, June Weber, appeals from the trial court's refusal to set aside a transfer of real property made by her late husband, Howard Weber, to his daughter from a former marriage, defendant Joyce Knackstedt. We affirm.

In this court tried case, we defer to the trial court's resolution of credibility, Rule 73.01, and we consider only those facts and inferences favorable to defendant, the prevailing party. *Atkins v. Clark*, 644 S.W.2d 365, 369 (Mo.App.1982); *Cusumano v. Outdoors Today, Inc.*, 608 S.W.2d 136, 139 (Mo.App.1980).

Howard Weber's (Howard) first wife died in 1976. Plaintiff and Howard started seeing each other socially in 1979. They were to be married in late December 1980. The wedding was cancelled, however, because of an argument. Howard did not propose again to plaintiff until January 21, 1981. They married on the same day.

After they were married, plaintiff and Howard lived together for about six weeks. Plaintiff left Howard shortly after returning from a week long honeymoon. Howard filed a petition for dissolution of the marriage but died prior to final disposition of the case.

From the date of his first wife's death to the date of his own death, Howard transferred the bulk of his assets into joint names with his daughter, defendant Joyce Knackstedt. One of these transfers occurred on September 16, 1980, when Howard transferred his residence to himself and defendant. Defendant paid no consideration for the transfer.

Plaintiff sued defendant in a two Count petition. In Count I, plaintiff alleged she was fraudulently induced to marry Howard, and, in Count II, she alleged Howard's transfer of his residence was in fraud of her marital rights. At the close of plaintiff's case, the trial court dismissed Count I and, at the conclusion of the entire case,

entered judgment in favor of defendant on Count II.

At trial, plaintiff was represented by counsel and then appeared pro se. On appeal, she appears pro se and raises eleven points. We address each.

Plaintiff complains the trial court failed to shift the "burden of proof" to defendant and further contends the trial court's judgment is unsupported by sufficient evidence. Plaintiff misstates the law and misreads the record.

The burden of proof on an issue seldom, if ever, shifts. It remains with the party urging the affirmative of the issue until the termination of the case. *E.g., Frank v. Wabash Railroad,* 295 S.W.2d 16, 22 (Mo. 1956). Plaintiff carries that burden in the present case. *See Dillard v. Dillard,* 266 S.W.2d 561, 563 (Mo.1954); *Matter of Estate of Mitchell,* 610 S.W.2d 681, 685 (Mo. App.1980). However, the burden of going forward would shift to defendant if plaintiff made a prima facie case. *See, e.g., Been v. Jolly,* 247 S.W.2d 840, 854 (Mo. 1952); *State ex rel. State Department of Public Health & Welfare v. Ruble,* 461 S.W.2d 909, 913 (Mo.App.1970).

■ As one of the elements of her claim, plaintiff had the burden of showing Howard had the intent to defraud her of her marital rights. Intent is a fact, and, by circumstantial evidence, plaintiff did make a prima facie showing of that fact. Her evidence showed Howard transferred his residence after they met, about four months before they were married. She also showed lack of consideration for the transfer and showed a sizable difference between the value of the residence and Howard's estate. *See Mitchell,* 610 S.W.2d at 687; *Nelson v. Nelson,* 512 S.W.2d 455, 459–61 (Mo.App.1974).

■ Her evidence of Howard's intent, however, was, at a minimum, rebutted by defendant's evidence. Defendant showed Howard's transfer of his residence was consistent with his pattern of transferring sizable sums of money to defendant alone and to defendant and himself in joint

names for a period of five years, beginning shortly after his first wife's death. Moreover, defendant's evidence revealed Howard dated several other women besides plaintiff prior to their engagement and showed he and plaintiff had a very unstable relationship. Defendant's evidence also revealed Howard and plaintiff were not engaged until some three months after the transfer of his residence was made. The engagement ring was not presented to plaintiff until early December, and Howard's daughter, who he saw on a weekly basis, knew nothing of any marriage plans until December. In addition, when Howard underwent an operation near the time of the transfer of his residence, plaintiff did not visit him in the hospital; nor does her name appear in the list of "significant others to patient" on the hospital interview sheet.

On this record, the Court quite properly could find plaintiff failed to sustain her burden of proof. *See Dillard,* 266 S.W.2d at 563; *Mitchell,* 610 S.W.2d at 687.

■ Plaintiff also contends the court violated the best evidence rule by admitting into evidence a photostatic copy of a letter allegedly written by Howard to plaintiff. More specifically, plaintiff contends the copy was inadmissible because defendant failed to prove the existence of the original letter.

The copy in issue consisted of a one page reproduction of a letter and of a stamped envelope addressed to plaintiff, all in Howard's handwriting. In the letter, dated November 9, 1980, one month after the transfer of the residence, Howard "regret[ted] the fact [plaintiff] had rejected [his] proposal of marriage" but acknowledged that "as you [plaintiff] stated on several occasions, we were not compatible and should go our separate ways." The copy of the letter and envelope was found in Howard's correspondence files by his executor. When plaintiff was asked about the original of the letter, she testified she did not have it, and she did not know where it could be found.

From this record, it is apparent that defendant failed to produce any witness specifically testifying to the authenticity of the copy. However, the copy did come from Howard's correspondence files, and there was no question that it was in Howard's handwriting. Moreover, the copy appears to be complete and is a xerox or equivalent type of copy. To us, this is a sufficient basis for the trial court, in the exercise of its discretion, to have found the copy was genuine and, therefore, admissible over plaintiff's objection. *Nibler v. Coltrane*, 275 S.W.2d 270, 274 (Mo.1955); *Inland USA, Inc. v. Reed Stenhouse, Inc.*, 660 S.W.2d 727, 734 (Mo.App.1983). The purpose of the best evidence rule, after all, is to secure the most reliable information available when the contents of a writing are in dispute. The rule does not require the exclusion of all possible evidence to satisfy this purpose. *See Schnucks Twenty-Five, Inc. v. Bettendorf*, 595 S.W.2d 279, 283 (Mo.App.1979).

Plaintiff's next three points center on the trial court's reopening the case for additional evidence. On defendant's motion after the close of the case, the Court reopened the case to receive testimony from Viola Gowert, a friend of Howard. There is no evidence on the record that plaintiff objected to the reopening.

When the case was reopened, Ms. Gowert testified she had talked to Howard prior to Howard's marriage to plaintiff, and, in that conversation, Howard told her: "[plaintiff] was very furious with [him] when she found out that [he] put the house in [defendant's] name." Plaintiff objected to this testimony as hearsay, but the trial court admitted it into evidence as a declaration against interest. On appeal, plaintiff contends the court abused its discretion in reopening the case for this testimony and again raises her hearsay complaint.

■ A trial court has discretion to reopen a case to afford a fair hearing of the evidence, if there is no unfair advantage to any party. *E.g., Pride v. Lamberg*, 366 S.W.2d 441, 445 (Mo.1963); *Mitchell v. City of Everton*, 655 S.W.2d 864, 866 (Mo.App. 1983). At trial, plaintiff made no complaint of unfair advantage. In fact, plaintiff called two witnesses on her own behalf. We therefore find no abuse of the trial court's discretion in reopening the trial.

Although the trial court did not abuse its discretion in reopening the case, it may have erroneously admitted Ms. Gowert's testimony. After having examined all the evidence, however, we do not consider the admission of this testimony to have changed the proof so as to add or detract from any evidence sufficiently enough to cause us to reverse the judgment. *See, e.g., Menos v. Hodges*, 499 S.W.2d 427, 429 (Mo.1973); *Nunn v. Nunn*, 644 S.W.2d 370, 373 (Mo.App.1982); *Layman v. Southwestern Bell Telephone Co.*, 554 S.W.2d 477, 480 (Mo.App.1977).[1]

---

1. Arguably, in the abstract, Howard's statement to Ms. Gowert was a declaration against his proprietary interest. 5 Wigmore, *Evidence* sec. 1458, at 329 (Chadbourne rev. 1974). *See also White v. Wilks*, 391 S.W.2d 260, 261 (Mo.1965). His statement, however, involved more than a disclaimer of full ownership. He also stated plaintiff found out about the transfer. This latter statement would constitute hearsay if it were offered to prove plaintiff's knowledge of the transfer. It would then be admissible only because it served to clarify and was part of the same statement in which Howard made a declaration against interest. The trial court could have found the hearsay portion was trustworthy because Howard probably would not falsify a fact so closely connected to his truthful declaration against interest. Wigmore, *supra*, sec. 1465, at 339–41.

The problem, however, is that Howard's transfer of his residence was not in issue. Both parties agreed the transfer had, in fact, been made. They disagreed about the propriety of the transfer. Thus, Howard's declaration against interest was not relevant to any disputed issue in the case. At best, it was redundant. Plaintiff, however, never objected to Howard's statement as being irrelevant or redundant. Her hearsay objection, perhaps, could have alerted the trial court had defendant's counsel not focused admissibility solely upon the grounds of a declaration against interest.

In any event, as noted in the opinion above, our ultimate ruling in this case does not depend upon this testimony whether it be admissible or inadmissible.

Plaintiff also contends the trial court incorrectly ruled the "dead man's statute," Sec. 491.010, RSMo Supp.1984, made her *incompetent to testify.* We have searched the record and failed to find this ruling.

Apparently, some type of motion or objection pertaining to the dead man's statute was made at one point in the trial. We assume this to be so from our reading of a discussion appearing in the record near the end of the hearing. During that discussion, plaintiff requested to read into evidence excerpts from plaintiff's and Howard's depositions taken in their dissolution action. This evidence pertained to an alleged oral pre-marital agreement between Howard and herself. Plaintiff reminded *the court that earlier in the trial her testimony had been objected to on the ground* she was incompetent. Defendant's counsel responded in part that only some of plaintiff's testimony had been ruled incompetent. The trial court obviously did not rule plaintiff was incompetent to testify, a fact evidenced by her extensive testimony on the record. Moreover, plaintiff was subsequently allowed to read into the record those portions of the depositions which she felt pertained to the alleged oral pre-marital agreement. Plaintiff therefore was not prejudiced by any court ruling declaring her incompetent to testify.

▪ Plaintiff also contends the trial court's conclusions "substantially misrepresent the law." We interpret this to mean the trial court erroneously declared or misapplied the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). We disagree with plaintiff's contentions for the most part. While we might find the trial court erroneously declared the law in some minor detail,[2] we also find the trial court reached the proper result. On appeal, our primary concern is the correctness of the result —not the route taken to reach it.

*E.g., Maryland Plaza Redevelopment Corp. v. Greenberg,* 594 S.W.2d 284, 286 (Mo.App.1979).

▪ Next, plaintiff, for the first time, complains that Howard's transfer of the residence was "quasi testimentary in character." Plaintiff argues this issue was included in her pleadings and was tried by consent. We find no evidence of either.

In her petition, plaintiff merely alleged the transfer was without consideration and not supported by donative intent. This allegation falls precisely in line with her claim of a transfer in fraud of marital rights and, thus, would not inform defendant that plaintiff was also contesting the transfer on the grounds it was quasi testamentary in nature. Nor did plaintiff present any further evidence at trial relevant to this issue which was not consistent with her claim of a transfer in fraud of marital rights. The "quasi testimentary character" of the transfer could not have been tried by consent if defendant could not have been aware of this characterization. Since this issue was not included in plaintiff's petition or tried by consent, we cannot convict the trial court of error. *E.g., Estate of Huskey v. Monroe,* 674 S.W.2d 205, 208 (Mo.App.1984). Moreover, an issue not raised at trial may not be raised on appeal. *E.g., South Side Plumbing Co. v. Tigges,* 525 S.W.2d 583, 590 (Mo.App.1975).

▪ Plaintiff contends the trial court erred in failing to find the existence of an oral antenuptial agreement as pleaded by her in Count I of her petition. We disagree.

At trial, plaintiff did testify that, on several occasions prior to their marriage, she and Howard agreed to sell their respective homes and purchase a new one together to be put in joint names. The trial court,

---

2. For example, the trial court concluded plaintiff had to prove Howard transferred his residence *after his betrothal* to her. This may not square with the theoretical concepts underpinning an alleged transfer in fraud of marital rights. Intent is a key element in these cases. In theory, it has been said, a person may decide to transfer his or her assets to defeat future marital rights before focusing on or selecting a specific fiancee or spouse. *See Noe v. Noe,* 359 Mo. 867, 224 S.W.2d 77, 78 (1949). *See also* 41 Am.Jur.2d *Husband and Wife* sec. 197 (1968). Practically, proof of this generalized intent may be insurmountable.

however, could have chosen to disbelieve plaintiff. *E.g., Cave v. Cave,* 593 S.W.2d 592, 595 (Mo.App.1979); *Dambach v. James,* 587 S.W.2d 640, 643 (Mo.App.1979). Moreover, even if the court chose to believe plaintiff, it could have inferred the decision about selling his property was merely an incident to Howard's proposal of marriage based upon love and affection and not made by Howard in exchange for an acceptance of his proposal. Furthermore, if the court found an antenuptial agreement "existed," it could have found it unenforceable because of the failure to comply with secs. 451.220 and 474.220, RSMo 1978, i.e. the agreement was not in writing and neither party made a full disclosure of all financial resources.

■ Finally, plaintiff argues the trial court's judgment destroyed her existing statutory rights as provided by sec. 474.-010, RSMo Supp.1984 (descent and distribution); sec. 474.235, RSMo Supp.1984 (share of omitted spouse); secs. 474.260–.300, RSMo 1978 and RSMo Supp.1984 (allowances, homestead rights); secs. 474.120 and .220, RSMo 1978 (fair consideration). We disagree. The trial court's judgment did not violate or destroy plaintiff' statutory rights. Plaintiff still retains her widow's rights; their dollar value simply is not as great as she would like.

Plaintiff's "Motion for Award of Rent, Wear and Tear and Damages" and defendant's request for damages "for the preparation of and filing of her response" to plaintiff's motion are both denied. Plaintiff's second "Motion to Correct the Record" is also denied.

Judgment affirmed.

SMITH, P.J., and SNYDER, J., concur.