K–SMITH TRUCK LINES, INC., Plaintiff/Respondent,

v.

Jack COFFMAN and Patricia Coffman, Defendants/Appellants.

No. 54171.

Missouri Court of Appeals, Eastern District, Division Two.

April 11, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 9, 1989.

Application to Transfer Denied June 13, 1989.

Kell, Kell, Custer, Weller, Miller & Flach, Thomas M. Flach, St. Louis, for defendants/appellants.

Leo V. Garvin, Jr., St. Louis, for plaintiff/respondent.

KAROHL, Judge.

Defendants, employee and wife, appeal judgments on three counts in favor of employer. The trial court awarded plaintiff a judgment on Count III [an action for conversion of checks payable to plaintiff] for actual damages with interest and punitive damages; on Count V [an action for recovery of money advanced to defendant employee, but not credited or repaid] for actual damages and interest; and, on Count VI [an action for recovery of overpayment of wages paid defendant employee] for actual damages in the amount of overpayment of wages. Defendant employee contends plaintiff failed to make a submissible case on all counts. Defendant employee and his wife contend Counts V and VI were barred by a five year statute of limitations because they were added to the lawsuit in an amended petition as new claims where the original four counts were timely but the additional counts were not timely. Defendants also claim the court erred in allowing some documentary evidence, over a best evidence objection, and, that the award of prejudgment interest was improperly calculated for two reasons. We affirm.

In this court tried case we affirm unless there is no substantial evidence to support the judgment, it is against the weight of the evidence, or erroneously declares or erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). On the submissibility issue, preserved by defendant employee, "the evidence is to be considered in the light most favorable to plaintiff, plaintiff is to receive the benefit of all inferences reasonably drawn from the evidence, and defendant's evidence that does not support plaintiff's case is to be disregarded." *Fahy v. Dresser Industries, Inc.*, 740 S.W.2d 635, 638 (Mo. banc 1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1576, 99 L.Ed.2d 891 (1988).

By following these rules of law the evidence would support findings of the following facts based upon evidence offered by plaintiff. Except for one documentary exhibit offered in plaintiff's case by defendants, they offered no evidence.

For approximately seventeen years defendant Jack Coffman was employed by plaintiff K–Smith Truck Lines, Inc. as a truck driver. During the last five or six years before he was fired on November 27, 1981, he regularly drove plaintiff's truck from St. Louis to Buffalo, New York to deliver United States mail. On return trips from Buffalo to St. Louis, defendant Jack Coffman would either return plaintiff's truck without a load, or haul a trip lease with cargo in route to St. Louis. If he returned empty he was paid wages of $7.50 an hour for ten hours. If he returned with a shipment it was agreed plaintiff would receive sixty percent of the revenue generated and defendant Jack Coffman would receive forty percent in lieu of wages.

Between March, 1979, and November, 1981, defendant Jack Coffman returned from Buffalo carrying shipments on numerous occasions, only some of which were reported to plaintiff. Coffman would go to Southwest Freight Lines in Buffalo to obtain return shipments, a "load back." On his next trip to Buffalo he would deliver a copy of the shipping documents for the prior shipment. For each "load back," Southwest Freight Lines produced and delivered to Coffman three checks, one for plaintiff for sixty percent of the shipping charges, one to Coffman for forty percent of the shipping charges and one for advances for expenses. Plaintiff paid expenses during this period as if Jack Coffman returned without cargo.

Every other week Coffman submitted by mail a time record which became the basis for salary. By agreement Coffman was not to submit or be paid salary for hours for return trips if he carried a "load back." Jack Coffman gave the Southwest Freight Lines checks, which were payable to plaintiff, to his wife and informed her of his hours to be recorded on his time cards. She prepared but he signed the time cards and instructed wife to mail the checks payable to plaintiff and the time cards to plaintiff. After plaintiff discovered it was not informed of all return trips with loads and did not receive checks payable to plaintiff from the freight line for return loads, plaintiff fired defendant Jack Coffman.

Plaintiff K–Smith Truck Lines, Inc., was owned by Kenneth Smith and Wilma Smith, his wife. In November, 1981, they were driving from St. Louis to Kansas City when they observed defendant Jack Coffman driving their truck eastbound towards St. Louis. Smith called Jack Coffman and asked if Coffman "loaded back." Coffman denied he had a load back and that he had taken a load west of the area where he was seen. In fact, he had delivered a "load back" from Buffalo to a plant near Kansas City. The Smiths investigated and obtained copies of numerous checks payable to plaintiff, delivered to Jack Coffman, but not received by plaintiff. Mrs. Coffman had forged the plaintiff's endorsement on the checks and deposited them in joint accounts she had with her husband in two banks. Subsequently, plaintiff obtained the originals of the checks and copies of trip leases, for which the checks were payment, and delivered them to police authorities in St. Louis County, Missouri. The investigation disclosed that defendant Jack Coffman had loaded back almost every week for approximately two years.

Defendant Patricia Coffman was charged criminally with forging checks payable to plaintiff and depositing them in defendants' bank accounts located at Lindbergh Bank in Hazelwood, Missouri and Centerre Bank of Florissant. She subsequently entered a plea of guilty and received probation. By deposition she admitted these acts but claimed her husband knew nothing about her activities, which included forging the checks and mailing plaintiff time cards that included hours for return trips even though Jack Coffman had return loads. Because the time cards claimed hours for return trips plaintiff could not have learned from the time cards that defendant employee was returning with loads. Defendant Jack Coffman signed the time records, but denied any knowledge that they contained hours for return trips when he carried cargo. Defendant Jack Coffman testified he first learned of his wife's activities when he was arrested and charged with forging the checks which he carried from the shipper to his wife with directions to mail to plaintiff.

There was no direct evidence that defendant Jack Coffman ever forged any of the checks or that he intentionally participated in presenting false time records to plaintiff. He was not prosecuted.

■ On these facts defendant Jack Coffman argues the trial court erred in finding a judgment against him on all counts. He not only cites the standard of review in *Murphy v. Carron*, 536 S.W.2d at 32, but also argues the facts of that case in support of his position that the evidence was insufficient to support judgments against him. In *Murphy*, the Supreme Court reversed a judgment as to husband because there was no evidence that he participated in a loan from plaintiff to his wife. Similarly, defendant Jack Coffman claims plaintiff "has shown no first hand evidence, or evidence of personal knowledge that appellant Jack Coffman knew of what his wife was doing." The fallacy in defendant's argument is that plaintiff is entitled to the benefit of all evidence and reasonable inferences supported by all evidence. *See, Fahy v. Dresser Industries, Inc.*, 740 S.W.2d at 638. Defendant Jack Coffman was seen west of St. Louis while returning from a delivery in Kansas City, a "load back" he denied. These facts support an inference that the denial was motivated by knowledge of his wife's scheme and he was a participant. By denying that he was driving plaintiff's truck eastbound in the area of Columbia, Missouri, defendant Jack Coffman attempted to hide the fact that he had carried a return shipment from Buffalo, New York to a customer located near Kansas City. The denial, if believed, would have secreted from plaintiff the existence of an obligation for payment of sixty percent of the proceeds of the shipment. In furtherance of this deception, time records indicating no "loads back" were necessary. Accordingly, the evidence and the inferences from the evidence supported findings by the trial court that: (1) Jack Coffman did know return shipments were not reported; (2) payments of sixty percent of the charge for return shipments were not forwarded to plaintiff; (3) advances to finance the return shipments were not accounted for; and, (4) defendant Jack Coffman was overpaid wages.

Further, defendant Jack Coffman acknowledged that he signed the time cards, some of which falsely reported hours and claims for wages for return trips with shipments. The time records were in evidence. The discrepancy consisting of claims for wages during times Jack Coffman was not entitled to wages over his signature infers actual knowledge of the scheme which resulted in damage to plaintiff. Defendant Jack Coffman's claim that plaintiff's evidence was insufficient to support judgments on each count is denied.

■ Both defendants claim Counts V and VI are barred by a five year statute of limitations. Section 516.120 RSMo 1986. The activities of defendants were discovered prior to November 27, 1981, the date defendant Jack Coffman was fired. By that date plaintiff had possession of trip leases and cancelled checks. The original petition in four counts was filed against Lindbergh Bank, Count I, Centerre Bank, Count II, and defendants Coffman, Counts III and IV. Counts I and II were settled when the banks paid plaintiff the face amounts of checks payable to plaintiff from Southwest Freight, after endorsements of plaintiff's name was forged by defendant Patricia Coffman. The banks paid plaintiff a total of $10,315.89. Plaintiff tried Counts III and IV against defendants, resulting in a judgment for plaintiff on Count III and for defendants on Count IV. The trial court in the first trial subsequently set aside the judgment and granted a new trial on Count III, which stated a cause of action against defendants for conversion. Count IV asserted a claim for equitable relief in the form of an accounting and constructive trust.

After the first trial and the order setting aside judgment in favor of plaintiff on Count III, "Plaintiff's Amended Petition by Interlineation" was filed on July 17, 1987. It purports to amend the original petition by stating additional paragraphs under the category of Facts Applicable To All Counts and adding Count V and Count VI. Defendants claim the added counts were filed

after November, 1986, or more than five years after plaintiff was fully informed on the facts, hence, they are barred by a five year statute of limitations. Plaintiff responds by arguing the amended petition relates back on the authority of Rule 55.-33(c) and *Hawkins v. Hawkins,* 533 S.W.2d 634, 638 (Mo.App.1976). Our Supreme Court held in *Koerper & Co., Inc. v. Unitel International, Inc.,* 739 S.W.2d 705, 706 (Mo. banc 1987) that the scope of relation-back of pleadings as stated in *Hawkins* correctly stated the rule and should be followed. The *Hawkins* court held that amended pleadings which arise out of the same conduct or transaction attempted to be set forth in the original pleading relate back to the date of the original pleading. *Hawkins,* 533 S.W.2d at 638.

The allegations in Counts V and VI of the amended petition arose out of the same circumstances and transactions as previously pleaded in the original petition. The original petition mentioned conversion of checks payable to plaintiff, advances, and overpayment of wages. We find that the amended petition and trial on Counts III, V and VI merely separated the original claim into its component parts so as to separate the elements of damages. The amended petition constituted no more than a division into three counts of what was alleged in the original petition as Count III.

Defendants rely on *Zero Manufacturing Co. v. Husch,* 743 S.W.2d 439 (Mo.App. 1987). We there said, "an amended pleading which demands proof of ultimate facts other than those necessary to sustain the original petition will not save an action from the bar of limitations." *Id.* at 442. The holding in *Zero* is not in conflict with the conclusion we reach in the present case. None of the facts or claims of damage alleged in Counts V and VI, added after the five year period expired, require proof of facts not relevant and material under the original pleading in Count III. The damages claimed in Count III of the original petition are no different than the those claimed in Counts III, V and VI of the amended petition. In addition, Count IV of the original petition requested an accounting of all sums due plaintiff from defen-

dants arising out of the scheme. The original judgment denied plaintiff relief under Count IV because the trial court concluded sufficient relief had been granted plaintiff on Count III. During the second trial the court granted plaintiff judgment on Counts III, V and VI but denied relief under Count IV. Significantly, the pleading in Count IV of the original, timely-filed petition encompassed the damages claimed in the added counts.

We conclude Counts V and VI of the amended petition relate back to the date of the original petition. The original petition was filed well within the five year period of the statute of limitations. The court did not err in overruling defendants' motion for dismissal of Counts V and VI. The additional counts merely separated plaintiff's original claim into three separate counts to accommodate the various categories of damages resulting from an allegation of intentional acts as set forth in the original petition.

Denial of the first two claims of error disposes of the claims addressed to reversal of part or all of the judgment. We look to alleged errors seeking a new trial or amendment of the judgments.

■ Defendants also claim the court erred in the admission of copies of trip leases for return trips and cancelled checks obtained from Southwest Freight Lines because "they were records of a third party and were introduced into evidence in violation of the best evidence rule."

Wilma Smith, wife of Kenneth Smith, testified for plaintiff. In summary, she testified she and her husband went to Southwest Freight Lines to obtain copies of the trip leases and checks payable to plaintiff. Southwest Freight Lines had an office near Kansas City, Missouri. At the time of trial it was no longer in business. Wilma Smith further testified she returned to Southwest Freight and obtained the *original* trip leases and checks from Southwest Freight Lines and turned them over to various police agencies in St. Louis County, Missouri. The court permitted Wilma to testify from copies of trip leases

and cancelled checks without ever producing the originals and without the benefit of testimony that she was a proper custodian of the records. This evidence was admitted over a dual objection on the ground of hearsay and best evidence. Defendants have preserved and here argue only error on the ground of best evidence. The hearsay objection is no longer in the case.

The trial court relied on our holding in *Weber v. Knackstedt,* 707 S.W.2d 800 (Mo. App.1986) in overruling the best evidence objection. In *Weber,* the court admitted a photostatic copy of a letter into evidence without witness testimony to the authenticity of the copy, when the copy came from correspondence files of a deceased person and there was no question the copy was in the decedent's handwriting. *Id.* at 802-03. There was only indirect evidence the copy was authentic. We held that was sufficient. Here, defendant Jack Coffman testified in his deposition that copies of trip leases presented to him appeared to be true copies, that he had no reason to challenge the authenticity of the copies and that he signed the originals of the copies. The deposition was admitted in evidence.

The best evidence rule requires the best document evidence which is within the power of the party to produce or is capable of being produced, must be produced in support of every disputed fact. *Dockery v. Mannisi,* 636 S.W.2d 372, 375 (Mo.App. 1982). Defendants raised no objection that originals of the trip leases or checks may have been available from local police departments or prosecuting authorities. The best evidence objection was considered on the basis that Southwest Freight Lines was no longer in business and therefore the original documents were unavailable. Defendants may not argue error on a ground not presented to the trial court. *Maples v. Charles Burt Realtor, Inc.,* 690 S.W.2d 202, 214 (Mo.App.1985).

In the present case authenticity was not questioned nor was completeness. Defendants did not claim that the originals were available either from a custodian of records of the former Southwest Freight Lines or local law enforcement authorities. In light of defendant employee's deposition testimony and in the absence of any contention that the copies were incomplete or not authentic or a claim that the originals were available (from local police departments or the prosecuting attorney) the court did not abuse its broad discretion in determining that the trip leases and cancelled checks were admissible. We have permitted secondary evidence where original documents are outside of the court's jurisdiction or otherwise unavailable or inaccessible. *Schnucks Twenty–Five, Inc. v. Bettendorf,* 595 S.W.2d 279, 283 (Mo.App.1979). We have also approved acceptance of such evidence where the authenticity is conceded or indirectly proven. *Weber v. Knackstedt, supra.*

Further, this was a court tried case and there was evidence from the testimony of plaintiff's in-court witnesses and the deposition testimony of defendants from the which the court could find defendant Jack Coffman: (1) made the trips proven by the trip leases; (2) received advances for himself and checks payable to plaintiff; and, (3) made trips with back loads but was paid wages on false time records. Finally, defendants do not claim the calculation of damages was unsupported by admissible evidence, evidence related to but not limited to copies of trip leases and checks. In this court tried case and on the facts we find no error in utilization of copies of documents obtained from a company no longer in business, whose authenticity was not challenged in the absence of a claim that the originals were available within the county and state but not produced.[1]

■ Defendants claim the judgment on Count III is defective because it alleges a cause of action for conversion of checks and the proper remedy was for money had and received. It has long been the law of this state that conversion does not lie for the wrongful taking of money. *See, Gaff-*

---

1. It is not clear why the originals were not available from local police authorities. It is clear that if the objection had been lodged on that ground plaintiff would have had an opportunity to reacquire the originals in order to satisfy the best evidence objection.

*ney v. Community Federal Savings and Loan Association,* 706 S.W.2d 530, 533 (Mo.App.1986). The rationale of that rule of law is that an ordinary debt or money cannot be described or identified as a specific chattel. *Breece v. Jett,* 556 S.W.2d 696, 710 (Mo.App.1977). However, Count III of plaintiff's petition alleges defendants converted checks issued by Southwest Freight Lines and payable to plaintiff. Count III of the petition describes and identifies specific property, the checks payable to plaintiff. Notes, bills, checks and other representatives of value will support a cause of action for conversion where they can be described or identified as a specific chattel. *Atlas Security Services, Inc. v. Git–N–Go, Inc.,* 728 S.W.2d 727, 730 (Mo.App.1987) (citing *Good Roads Machinery Co. v. Broadway Bank,* 267 S.W. 40, 42 (Mo.App.1924)). The recognized measure of damages for conversion of an identifiable check is prima facie the value of the paper converted. *Id.* at 730. Count III of the petition stated a cause of action for identifiable checks, copies of which were produced in evidence. The court did not err in not dismissing Count III for failure to state a cause of action.

■ Finally, defendants claim in separate points the court erred in calculating interest on the judgment awards in Count III (conversion) and Counts V and VI (recovery of advances and overpayment of wages). We find no error in awarding plaintiff prejudgment interest on the cancelled checks payable to plaintiff but taken by defendants and deposited with a forged signature.

The interest was calculated by the court only on the net balance of all the checks not recovered by plaintiffs from the two banks. The banks repaid plaintiff $10,315,89. The face value of the checks totaled $11,872.45. For whatever reason plaintiff accepted a settlement on Counts I and II from the banks of $1,556.56, less than the total face value of the checks deposited on forged signatures. We find no error in allowing prejudgment interest on the total amount of the checks from the date of taking to the date of settlement and recovery from the banks. This result does not violate the provisions of § 537.060 RSMo

1986, which require plaintiff to reduce its claim against defendants, as tort feasors, to the extent of the stipulated amount of settlement. Defendants do not cite and we have not discovered any authority which stands for the proposition that the court was not authorized to grant prejudgment interest, in a conversion of checks case, from the date of conversion to the date of judgment for all sums not repaid by third parties in suit or settlement.

■ Defendants' final argument is that Counts V and VI, when filed, constituted a first demand for damages there asserted and that prejudgment interest prior to the date of the amended petition was filed is unauthorized. Prejudgment interest is appropriate on liquidated claims under § 408.020 RSMo 1986. Such interest is allowable when demand is made, and if no demand then when suit is filed. *See, General Aggregate Corp. v. LaBrayere,* 666 S.W.2d 901, 909–10 (Mo.App.1984). The full answer is that the amended petition claimed the same damages previously "demanded" in the original petition. Plaintiff is therefore entitled to prejudgment interest on liquidated damages from the date the suit was filed.

We affirm.

GRIMM, P.J., and GARY M. GAERTNER, J., concur.