**LAPPE AND ASSOCIATES, INC.,**
Plaintiff-Appellant,

v.

**Stephen E. PALMEN, Defendant-Respondent.**

No. 57978.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 18, 1991.

Iris G. Ferguson, St. Louis, for plaintiff-appellant.

STEPHAN, Judge.

Lappe and Associates, Inc. appeals from a judgment rendered against it in a civil action that Lappe and Associates instituted against Stephen E. Palmen for conversion. We reverse and remand.

At the outset, we note that Willard Lappe, president of Lappe and Associates, currently alleges that even before the transaction at controversy, Palmen owed him money. Lappe claims that as a result of this debt, Palmen paid him $11,960.40 by way of a second party check, drawn on one Walter Hof's account, that was endorsed with Hof's name. Lappe further claims that he took this check to his bank and deposited it. Lappe contends that although his bank initially credited his account, the bank later withdrew the credit based on an affidavit Hof signed stating that the endorsement was forged.

We turn now to the transaction at controversy. On December 3, 1986, Robert Fehrman, the owner and stockbroker for Westport Financial Group, Inc., confronted Palmen, an account executive for Westport, regarding almost $19,000 that was missing from two of its clients' accounts. At this meeting, Palmen admitted to Fehrman and two others that he had taken the money. Fehrman advised Palmen to return the money immediately.

The next day, Palmen called Lappe. He advised Lappe to invest $18,500 in a new corporate stock issue that was coming out. Palmen stated that based on the market-making activities, Lappe could make a sizeable profit within a short period of time. He advised Lappe that he needed the money immediately. Therefore, on December 5, 1986, Lappe gave his secretary, Debbie Hagner, a check for $18,500, which was drawn on one of Lappe and Associates' accounts, and was issued to Mercantile Bank. He asked her to: (1) take the check to Mercantile; (2) request a cashier's check payable to Westport; (3) deliver the cashier's check to Westport; and (4) bring back whatever account cards Westport gave her. Hagner: (1) took the check to Mercantile; (2) requested and received two cashier's checks totaling $18,500; and (3) delivered the checks to Reggie, a secretary at Westport. Reggie told Hagner that Palmen was at Dierdorf and Hart's. Hagner thereafter went to Dierdorf's to say "hi" to Palmen and to let him know that she dropped off the checks. She subsequently left Dierdorf's and returned to Lappe and Associates. She notified Lappe that Westport did not have any account cards for him. Lappe immediately attempted to stop payment on the cashier's checks, however, his attempt was not successful.

That same day, Palmen informed Fehrman that the $18,500 Hagner brought in was to cover his obligations with respect to the missing money. The following day, December 6, 1986, Hagner informed Lappe

that Palmen was no longer employed at Westport.

In a letter dated July 9, 1987, Westport and Lappe entered into an agreement that provides in pertinent part:

... Westport will return Lappe and Associates the $11,960.40 charged to Lappe and Associates bank account by virtue of the Affidavit of Forgery of Walter and Jeannette Hof. As we also discussed, Westport will assist Mr. Lappe in obtaining an additional $6,539.60 from Steve Palmen.

In exchange Westport will require a release of Mr. Lappe's claims through and including the date of this letter. Mr. Lappe's signature at the foot of this letter at the time of payment will suffice.

On August 20, 1987, Lappe and Associates filed suit against both Palmen and Westport. Lappe and Associates alleged that Palmen and Westport cashed two cashier's checks totaling $18,500 and wrongfully applied these checks to other of Palmen's customers' accounts to cover amounts fraudulently taken from these accounts. Lappe and Associates further alleged that it demanded the return of the $18,500, but that Palmen and Westport wrongfully and unlawfully refused to return the money, thereby converting this sum to their own use.

On November 6, 1987, Palmen filed his answer, denying each and every allegation in Lappe and Associates' petition.

On December 31, 1987, Westport filed its answer, a counterclaim and a cross-claim. In its answer, Westport denied most of the allegations in Lappe and Associates' petition. Additionally, Westport asserted five affirmative defenses: (1) accord and satisfaction based on the July 9, 1987 letter agreement; (2) failure to state a claim upon which relief may be granted; (3) estoppel and waiver based on the July 9, 1987 letter agreement; (4) unclean hands based on acceptance of a $11,960.40 check drawn on Hof's account to which Lappe and Associates was not entitled; and (5) laches.

In its counterclaim, Westport asserted two claims: (1) breach of contract based on the fact that Lappe and Associates sued Westport despite the July 9, 1987 letter agreement; and (2) malicious and improper use of the judicial process.

Finally, in its cross claim, Westport asserted that Palmen is responsible to indemnify Westport in the amount of $11,960.40 that Westport paid Lappe and Associates pursuant to the July 9, 1987 letter agreement.

Lappe and Associates answered Westport's counterclaim, denying that the July 9, 1987 letter agreement was related to Lappe and Associates' present action. Instead, Lappe and Associates maintained that the letter agreement governed money Palmen previously owed Lappe based on the Hof transaction.

On October 24, 1989, Lappe and Associates and Westport, by leave of court, agreed to dismiss their respective claims against each other, with prejudice. Additionally, on November 16, 1989, Westport dismissed its cross-claim against Palmen.

On January 24, 1990, Lappe and Associates' cause proceeded to trial. Lappe, Hagner, E.G. Burton, III (Westport's attorney), and Fehrman testified on Lappe and Associates' behalf. Lappe and Associates also called Palmen; however, Palmen asserted his Fifth Amendment right not to testify to many questions, on the grounds that his answers might incriminate him. Palmen moved for a directed verdict at the conclusion of Lappe and Associates' case. Additionally, Palmen objected to Lappe and Associates' exhibits. Palmen's motion and objections were taken under submission. Palmen presented no evidence.

On January 30, 1990, the trial court overruled Palmen's motion and admitted Lappe and Associates' exhibits. It found in favor of Palmen and against Lappe and Associates. From this order, Lappe and Associates appeals.

In this court-tried case, we affirm unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). At the outset, we note

that Lappe and Associates' brief violates Rule 84.04(h) which states: "[a]ll statements of fact and argument shall have specific page references to the legal file or the transcript." Lappe and Associates failed to even make one reference to their legal file or transcript. This violation of the Rules is not condoned.

The point dispositive of this appeal is Lappe and Associates' second point. It states: "[t]he trial court erred in finding for [Palmen] in a claim against him for conversion where [Lappe and Associates'] evidence showed that [Lappe and Associates'] checks were appropriated by [Palmen] for a stated purpose and, thereafter were caused by [Palmen] to be used for another purpose."

■ Conversion is the unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's rights. *Rehbein v. St. Louis Southwestern Ry. Co.,* 740 S.W.2d 181, 182–183 (Mo.App.1987). Ordinarily, a general debt does not give rise to a cause of action for conversion. *Id.* at 183. However, conversion may lie as to funds placed in the custody of another for a specific purpose and their diversion for other than the specified purpose. *Emerick v. Mutual Ben. Life Ins. Co.,* 756 S.W.2d 513, 523 (Mo. banc 1988). Notes, bills, checks and other representatives of value will support a cause of action for conversion where they can be described or identified as a specific chattel. *K–Smith Truck Lines, Inc. v. Coffman,* 770 S.W.2d 393, 399 (Mo.App.1989).

■ Here, Palmen called Lappe and advised him to immediately invest $18,500 in a new corporate stock issue that was coming out. Lappe thereafter gave Hagner a check issued to Mercantile Bank along with explicit instructions: (1) take the check to Mercantile; (2) request a cashier's check payable to Westport; and (3) deliver the cashier's check to Westport. Hagner did as Lappe instructed, eventually leaving two cashier's checks totaling $18,500 with Reggie, a secretary at Westport. Reggie told Hagner that Palmen was at Dierdorf and Hart's. Hagner thereafter went to Dier-

dorf's and informed Palmen that she dropped off the checks. That same day, Palmen informed Fehrman that the $18,500 Hagner brought in was to cover his obligations with respect to the missing money.

Clearly, Lappe gave Palmen $18,500 to make an investment in a new corporate stock issue that was coming out. Palmen used the money to cover his obligations with respect to the missing money. Since Lappe placed funds in Palmen's custody for a specific purpose and the money was diverted for other than the specified purpose, Palmen is guilty of converting Lappe's money. For this reason, we reverse the trial court's judgment because there is no substantial evidence to support it.

■ Furthermore, when questioned, Palmen invoked his Fifth Amendment right not to testify on the ground that the answers might incriminate him. In civil cases, a witness' invocation of his privilege against self-incrimination justifies an inference that, if he had answered the question truthfully, the answer would have been unfavorable to him. *Matter of K.A.P.,* 760 S.W.2d 553, 554 (Mo.App.1988). Thus, Palmen's refusal to answer most of Lappe and Associates' questions supports a conclusion that truthful answers would have been unfavorable to him.

■ The recognized value of damages for conversion of an identifiable check is prima facie the value of the paper converted. *K–Smith Truck Lines, Inc. v. Coffman,* 770 S.W.2d 393, 399 (Mo.App.1989). Here, the value of the property converted is $18,500. Although this court has a duty pursuant to Rule 84.14 to dispose finally of a case before it on appeal, the ironclad tone of this duty is tempered by the fact that final disposition presupposes a record and evidence upon which we can rule with some degree of confidence in the reasonableness, fairness and accuracy of our final conclusion. *Searcy v. Searcy,* 658 S.W.2d 931, 934 (Mo.App.1983). We are unable to conclude that Lappe and Associates is entitled to $18,500. In the July 9, 1987 letter agreement, Westport and Lappe and Associates agreed that Westport would pay

Lappe and Associates $11,960.40 based on the affidavit of Walter and Jeanette Hof. Both parties also agreed that Westport would help Lappe and Associates obtain an additional $6,539.60 from Palmen. Curiously, these two figures total $18,500, the sum now at controversy. However, when Lappe and Associates instituted suit against Palmen it did not seek $6,539.60. Instead, it sought $18,500. Lappe and Associates argued that the $11,960.40 constituted a separate debt. Since we are unable to determine the truthfulness of this assertion, we remand so that the trial court can determine whether Lappe and Associates is entitled to $18,500, $6,539.60 ($18,500 less the amount received from Westport), or some other sum.

For the reasons stated above, we reverse and remand for further proceedings consistent with this opinion.

REINHARD, P.J., and CRANE, J., concur