**DAYTON CONSTRUCTION,
INC., Respondent,**

v.

**Troy MEINHARDT, Appellant.**

No. WD 47757.

Missouri Court of Appeals,
Western District.

June 21, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 2, 1994.

Application to Transfer Denied
Sept. 20, 1994.

George E. Kapke, Independence, for appellant.

Alan B. Gallas, Paul R. Lamoree, Gallas & Schultz, Kansas City, for respondent.

Before ULRICH, P.J., and
BRECKENRIDGE and SPINDEN, JJ.

ULRICH, Judge.

Troy Meinhardt appeals the judgment on two counts to the benefit of Dayton Construction, Inc., (Dayton) entered pursuant to jury verdict on count I for conversion of certain checks payable to Dayton, and on count II for injunction and constructive trust, tried to the trial court. Judgment on count I was in the sum of $46,000, plus interest calculated by the court in the sum of $11,285.75, plus punitive damages in the sum of $10,000 and on count II in the sum of $29,111.57 as a constructive trust in said amount with a specific bank account. Mr. Meinhardt claims as point one that the trial court erred in failing to grant his motion for directed verdict and his motion for judgment notwithstanding the verdict, or alternatively a new trial, as to count I for conversion, asserting that Dayton failed to state a cause of action because Dayton's money was held by Mr. Meinhardt for general corporate purposes and was not subject to conversion. Additionally, Mr. Meinhardt claims as point two that the court erred in awarding judgment on count I because the award of damages to Dayton was not supported by competent evidence. As point three, Mr. Meinhardt claims that the trial court erred in awarding judgment to Dayton on count II because the court failed to give him credit for sums he expended for certain of Dayton's bills and accounts owed.

The judgment of the trial court is affirmed.

In May of 1988, Dayton and Mr. Meinhardt entered into a business relationship in which Mr. Meinhardt was to be paid $8 per hour for his effort pertaining to a remodeling business.[1] Appellant's duties included securing remodeling work; scheduling work; arranging for subcontractors to perform work; scheduling suppliers and acquiring materials; collecting accounts; and paying employees, subcontractors, and suppliers for work done in behalf of the company.

The business established a bank account in a bank in Olathe, Kansas, and Mr. Meinhardt

---

1. Mr. Meinhardt claimed at trial that an oral partnership was formed and he was to share the profits. Dayton's evidence at trial refuted this claim.

was authorized to sign checks on that account to conduct business. Mr. Meinhardt's payroll check was to be written from that account.

In the summer of 1989, Mr. Meinhardt opened a separate bank account in Boatmen's First National Bank of Kansas City, Raytown branch (Boatmen's), in the name of Dayton Construction. The existence of this account was unknown to anyone else affiliated with Dayton. Mr. Meinhardt provided purported Dayton resolutions to Boatmen's authorizing the account, signed as signatory on the bank's form for sole proprietorships, and identified as the depositor "Troy Meinhardt d/b/a Dayton Construction." Mr. Meinhardt later changed the account to reflect as depositor "Troy Meinhardt d/b/a Dayton Re-Construction." Unknown to Dayton, certain checks received by Mr. Meinhardt from customers who transacted business with Dayton were deposited by Mr. Meinhardt into this account.

Bill Brewer, President of Dayton, discovered that checks payable to Dayton had been deposited in the Boatmen's bank account. On April 27, 1990, a temporary restraining order was obtained in this action precluding any account activity which became a preliminary injunction on May 4, 1990, and ultimately final judgment imposed a constructive trust on the account by judgment of the trial court.

During the trial, Mr. Meinhardt acknowledged depositing a total of $70,576.26 in the Boatmen's account. Some of Mr. Meinhardt's deposits included revenues from remodeling jobs that he claimed he did independently of the business relationship he had with Dayton. Additionally, the total sum deposited to the Boatmen's account included nineteen specific checks paid by customers in payment for thirteen jobs completed by Dayton, nineteen of such checks totaling $54,300. One check totaling $5,654 for the "Brinkman job," dated June 6, 1990, was kept by Mr. Meinhardt and not deposited into the Boatmen's account because of the then-existing preliminary injunction applicable to the account.

During trial, Mr. Meinhardt identified $14,386 in checks paid out of the Boatmen's

account into the Dayton account in Olathe, Kansas. The first deposit was dated January, 1990, and the last dated in March, 1990.

Mr. Meinhardt paid a relatively small sum from the Boatmen's account to suppliers and subcontractors of the Dayton business. During trial, Mr. Meinhardt identified $3,128.43 in checks drawn on the Boatmen's account by him and paid to Dayton suppliers or subcontractors in five of thirteen jobs. Additionally, Mr. Meinhardt testified that he paid $7,674 to suppliers of certain of the thirteen jobs, said sum resulting from four cashier's checks purchased by Mr. Meinhardt in June, 1990, using proceeds of the Boatmen's account. Mr. Meinhardt testified that $16,117 from the Boatmen's account was used for his personal use in addition to $3,733 he spent for "truck expenses."

I

As point one on appeal, Mr. Meinhardt claims that the trial court erred in failing to grant his motion for directed verdict and in failing to grant his motion for judgment notwithstanding the verdict, or alternatively, for a new trial, asserting that Dayton's petition for conversion in count I failed to state a cause of action because money held by Mr. Meinhardt for Dayton's purposes is not subject to conversion.

Conversion is the unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's rights. *Lappe and Assoc., Inc. v. Palmen*, 811 S.W.2d 468, 471 (Mo. App.1991). Conversion is not the proper remedy to recover on an ordinary debt. *Breece v. Jett*, 556 S.W.2d 696, 710 (Mo.App. 1977). "[A]s a general rule a claim for money may not be in conversion because conversion lies only for a specific chattel which has been wrongfully converted." *Gaffney v. Com. Fed.Sav. & Loan Ass'n*, 706 S.W.2d 530, 533 (Mo.App.1986). Money is the appropriate subject of conversion only when it can be described or identified as a specific chattel. *Jett*, 556 S.W.2d at 710. Neither is conversion a proper cause of action for withdrawal of money from a joint bank account. *Id.* Specific checks, drafts or notes will sup-

port a cause of action for conversion where they can be described or identified as a specific chattel. *K–Smith Truck Lines, Inc. v. Coffman,* 770 S.W.2d 393, 399 (Mo.App.1989). The measure of damages for conversion of identifiable checks or drafts is "prima facie the value of the paper converted." *Id.*

■ The checks and drafts in this case were each specifically identified at trial. Mr. Meinhardt deposited the checks directly into Mr. Meinhardt's separate Boatmen's account. Mr. Meinhardt was the only person with access to the proceeds of the checks. Dayton Construction, Inc. was excluded from exercising its ownership rights in the checks and their proceeds. The agreement of the parties required that Mr. Meinhardt deposit all checks or drafts received as payment for remodeling work into the Dayton joint account. Mr. Meinhardt could then draw funds from that joint account to pay suppliers and pay the other expenses of the remodeling business. Mr. Meinhardt's actions in depositing specific and identifiable checks directly into his secret separate account properly gave rise to an action for conversion. The trial court did not err in overruling Mr. Meinhardt's motions for directed verdict, for j.n.o.v., or for a new trial. Point one is denied.

## II

As point two on appeal, Mr. Meinhardt argues that giving the jury the verdict directing instructions for conversion and for punitive damages was error because, as he argued in point one, conversion was not a cause of action, and if the cause of action were for money had and received punitive damages would not be appropriate. This portion of point two is repetitive of the contentions denied in point one. Mr. Meinhardt also contends that the instructions to the jury were given in error because the instructions did not direct the jury to credit Mr. Meinhardt for the amounts he paid to suppliers and subcontractors and for the amounts he drew from the separate account and deposited into the joint account. As an additional issue of point two, Mr. Meinhardt avers that nothing justified the submission of punitive damages.

## A

■ The amount of damages awarded is primarily a matter for the jury, and the jury's broad discretion in determining the amount of damages is conclusive on appeal, especially where the verdict has the approval of the trial court as evinced by its overruling the motion for j.n.o.v. or for new trial. *La-Martina v. Hannah,* 675 S.W.2d 444, 447 (Mo.App.1984). The assessment of damages by the jury will not be reversed on appeal if there is substantial evidence to support the verdict and if damages were returned on any rational assessment of evidence. *Moore v. Missouri Pac. Ry.,* 825 S.W.2d 839, 846 (Mo. banc 1992).

■ Evidence supported the conclusion that the twenty specifically identified checks totalling $59,945.00 were converted by Mr. Meinhardt. From that amount, Mr. Meinhardt deposited into the Dayton joint account $14,386.00. No affirmative defense was pleaded asking the jury to offset the amount converted by any sum Mr. Meinhardt paid from his separate account to suppliers or subcontractors. Rule 55.08; 55.33. The absence of direction to the jury to offset the verdict by the amounts Mr. Meinhardt paid to subcontractors or suppliers was not erroneous. The jury heard the evidence of the payments to suppliers and is presumed to have properly assessed all the evidence in arriving at a supportable determination of damages. The trial court properly entered judgment on the jury's verdict awarding $46,000 in actual damages.

## B

■ Punitive damages are allowed in Missouri when the jury finds a defendant liable for conversion and also specifically finds that the conduct of the convertor was outrageous because of his evil motive or reckless indifference to the rights of others. MAI 10.01 [1990 revision]; *Biermann v. Gus Shaffar Ford, Inc.,* 805 S.W.2d 314, 322 (Mo. App.1991). The evidence presented was sufficient to support the jury's finding that Mr. Meinhardt intentionally converted checks belonging to Dayton and that Mr. Meinhardt

did so either with the evil intent to improperly profit at Dayton's detriment or with reckless indifference to Dayton's rights in the checks.

A portion of Mr. Meinhardt's testimony on cross-examination reveals Mr. Meinhardt's motives, his intent, and his reckless indifference to Dayton's rights.

Q. Can you tell me the circumstances by which you opened the account, please?

. . . .

Mr. Meinhardt: To do business on my own.

. . . .

Q. Why did you use the name Dayton Construction when you opened an account to do your own business?

Mr. Meinhardt: Because I was building a reputation in the remodeling business with that name.

Q. So you did want to use the name of your employer to do your own business. You didn't want anybody to know you weren't doing business under another name; you wanted to be Dayton Construction, didn't you?

Mr. Meinhardt: I think that's true, yes.

. . . .

Q. You never told Mr. Brewer that you were going to open up a bank account in the name of his company, Dayton Construction, did you?

Mr. Meinhardt: No, I did not.

Q. And, of course, you were still receiving paychecks from Dayton Construction, Inc. this whole time, weren't you?

Mr. Meinhardt: Yes.

. . . .

Q. You told Boatmen's Bank that you were a sole proprietor, an unincorporated business, Dayton Construction; that's what you told Boatmen's bank, didn't you?

Mr. Meinhardt: Yes.

Mr. Meinhardt deposited large checks payable to Dayton into his own secret account knowing they belonged to Dayton. He paid some Dayton suppliers from the secret account, but he paid other suppliers from the Dayton joint account. Sufficient evidence was presented to support the jury's verdict awarding punitive damages.

The trial court did not err in entering judgment on the jury's verdict nor in overruling Mr. Meinhardt's motion for j.n.o.v. or for a new trial. Point two is denied.

### III

Mr. Meinhardt avers, as his third point on appeal, that the trial court erred in granting Dayton a constructive trust on his separate account to the extent of $29,111.57. The court determined this sum after determining Mr. Meinhardt had deposited converted checks totaling $54,300.00 into his separate account and paying out of his account $25,188.43 to either the Dayton joint account or to Dayton's suppliers or subcontractors. The difference between the two amounts is $29,111.97. The trial court's accounting was adequately supported by the evidence.

Mr. Meinhardt appears to argue that because he paid $25,188.43 of the $54,300.00 converted funds to Dayton or "for Dayton's benefit," that a constructive trust on any amount remaining in the account would be improper. A constructive trust can properly be imposed when one improperly acquires or withholds property from the rightful owner and when there exists a confidential relationship between the parties. 89 CJS Trusts § 151; *Matlock v. Matlock*, 815 S.W.2d 110, 114 (Mo.App.1991). "[T]he very essence of the remedy of constructive trust is the identification of specific property or fund as the res upon which the trust may be attached." *Blue Cross Health Serv., Inc. v. Sauer*, 800 S.W.2d 72, 76 (Mo.App.1990), quoting Bogart, *The Law of Trusts and Trustees 2d*; § 471 at 9 (1978). Where an agent collects checks for the principal and deposits them into his own account, the deposit may properly be impressed with a trust in favor of the principal. 89 CJS Trusts § 151. To establish a constructive trust, evidence must be unquestionable in character and so clear, cogent and convincing as to exclude every reasonable doubt in the mind of the trial court. *Fix v. Fix*, 847 S.W.2d 762, 765 (Mo. banc 1993).

The trial court properly imposed a constructive trust on the bank account to the extent of the difference between the amount converted and the amount shown to have been paid to Dayton or for its benefit. Point three is denied.

The trial court's judgment is affirmed.

All concur.