Steven J. BRIGGS, Appellant,

v.

The KANSAS CITY SOUTHERN
RAILWAY COMPANY,
Respondent.

No. WD 49949.

Missouri Court of Appeals,
Western District.

April 30, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 28, 1996.

Application to Transfer Denied
Aug. 20, 1996.

Drew C. Baebler, Michael L. Nepple, St. Louis, Bauer & Baebler, for appellant.

Thomas S. Stewart, Douglas R. Dalgleish, Christopher P. Sweeney, Lathrop & Norquist, Kansas City, for respondent.

Before BRECKENRIDGE, P.J., and ULRICH and LAURA DENVIR STITH, JJ.

BRECKENRIDGE, Presiding Judge.

Steven J. Briggs brought a claim under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51 et seq., against his employer, the Kansas City Southern Railway Company, for damages arising from an injury he sustained after falling over a partially buried tie plate. The jury entered a verdict in favor of Mr. Briggs and assessed his damages at $150,000. The trial court then granted Kansas City Southern's motion for judgment notwithstanding the verdict, and, alternatively, its motion to amend the judgment.

Mr. Briggs appeals, contending that the trial court erred in entering judgment notwithstanding the verdict, in that he presented sufficient evidence to show that Kansas City Southern had notice of the tie plate, that the tie plate was a hazard, and that the railroad was negligent in failing to remove it. Mr. Briggs also contends the trial court erred in granting Kansas City Southern's alternative motion to amend and correct the judgment by allowing Kansas City Southern a $40,000 offset on the amount awarded by the jury.

The trial court's judgment notwithstanding the verdict is reversed. The trial court's grant of the alternative motion to amend the judgment is affirmed in part and reversed in part, and the case is remanded to the trial court to enter judgment in favor of Mr. Briggs for $149,550.

A motion for judgment notwithstanding the verdict challenges the submissibility of the plaintiff's case. *White v. Union Pacific R. Co.*, 871 S.W.2d 50, 52 (Mo.App. 1993), cert. denied, —— U.S. ——, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994). This court re-

views the grant of a motion for judgment notwithstanding the verdict as a matter of law, viewing the evidence and reasonable inferences drawn therefrom in a light most favorable to the plaintiff. *Crawford v. Norfolk and Western Ry. Co.,* 901 S.W.2d 252, 254 (Mo.App.1995). In determining whether Mr. Briggs produced sufficient evidence to make a submissible case under FELA, this court applies federal law. *See Urie v. Thompson,* 337 U.S. 163, 174, 69 S.Ct. 1018, 1027, 93 L.Ed. 1282 (1949).

On August 22, 1991, Mr. Briggs was employed as a conductor for Kansas City Southern. He was assigned to work at the "Dalby Pass." The Dalby Pass is a section of track which has a passing track, 6500 feet to 7000 feet long, running parallel to a main track. There is a distance of approximately nine feet between the outside rails of the two tracks. The Pass is designed to allow trains traveling in opposite directions to bypass each other. It is located in the southwest corner of Missouri, approximately four to five miles north of Neosho, Missouri.

Mr. Briggs was assigned to work with Reginald Rhue, an engineer. Their job was to assist trains which had difficulty traveling over hills. They would couple two engines onto the back of a train and then push the train south into Arkansas. At approximately 5:00 p.m., a train arrived on the main track which needed a push.

After helping to connect the engines to the train, Mr. Briggs started to perform an "air brake test." Mr. Briggs' task was to find the piston underneath the last car on the train, tell the engineer on the train to "release the brakes" and then watch the piston "go all the way in," indicating that the brakes had properly released.

Mr. Briggs walked down the side of the train in the "ballast" between the main track and the passing track, bending over to look for the piston underneath the train. Ballast is the crushed stone or rock placed around the railroad tracks, with a diameter of about two and one-half inches. It is "loose" and can roll under the feet of someone who is walking on it. After Mr. Briggs found the piston, he told the engineer to "set them up." He squatted down a few feet from the train

so that he could see underneath it and then watched the piston "release and go all the way in." As he started to step back so that he could stand up, his foot "got hooked" on a tie plate and he "went down hard," hitting his tail bone on the rail of the passing track. After he fell, he saw a rusty tie plate "partially embedded" in the ballast and "sticking up." Mr. Briggs did not see the tie plate before he fell, although he had seen other tie plates in the ballast that day. At the time Mr. Briggs fell, Mr. Rhue was on the helper engine, watching Mr. Briggs. Mr. Rhue did not see what had caused Mr. Briggs to fall, but later, as the engine went past the area where Mr. Briggs had fallen, Mr. Rhue looked down and saw a tie plate with a "scuff mark" on it, partially buried in the ballast.

A tie plate is a piece of metal eight and one-half inches in width and eleven inches in length, weighing approximately fifteen pounds. It is fastened above a wooden tie and distributes the weight of heavy loads from the rail to the tie. At the time of the accident, Kansas City Southern had almost ten million tie plates on its tracks, with approximately 6500 tie plates per mile. Both Mr. Rhue and Mr. Briggs testified that a tie plate in a roadbed can pose a hazard, because it is easy to trip over. Mr. Briggs stated that it was not unusual to see a discarded tie plate in the ballast. Mr. Rhue testified that there is often debris in many areas of the track, including tie plates, and "if we had to stop and pick up every tie plate we saw out there, we'd never get anywhere on the railroad."

The track at the Dalby Pass was regularly inspected by railroad personnel. A three-man maintenance crew was responsible for inspecting the section a minimum of twice a week and making minor repairs. They would look for any debris in the area of the ballast where railroad employees had to walk. A "roadmaster" would also travel over the Dalby Pass a minimum of twice a week. It was his duty to "line up the maintenance work." If the maintenance crew or the roadmaster saw a tie plate, they were to remove it.

David W. Brookings, the vice-president and chief engineer for Kansas City Southern, testified for the defense. His responsibilities included overseeing the design, construction and maintenance of the railroad tracks and the ballast. He was aware that conductors had to walk in the ballast between the passing track and the main track at the Dalby Pass. He was also aware that in the course of their duties, conductors had to "stoop and look under" a train to check the air cylinders or other equipment. He admitted that a discarded tie plate in the ballast could be a "trip hazard."

Kansas City Southern had not received any complaints about the tie plate before the incident. Mr. Brookings did not know how the tie plate had gotten into the ballast, but suggested that tie plates can fall off rail cars or can become loose and vibrate off a tie. He explained that if a tie plate came loose from a tie, it could move several feet from the rail, "over a period of time." He also testified that it was "not uncommon to have individual tie plates or anchors or spikes laying around the road." He did not feel that a single tie plate lying in the ballast was a "major concern," but if it was reported to the railroad, it would be removed.

Mr. Briggs filed a FELA claim against Kansas City Southern for injuries he sustained as a result of the accident. The jury returned a general verdict in favor of Mr. Briggs in the amount of $150,000. The trial court then entered judgment for Mr. Briggs per the verdict.

Kansas City Southern filed a motion for judgment notwithstanding the verdict and, alternatively, a motion to amend and correct the judgment. The motion for judgment notwithstanding the verdict alleged that Mr. Briggs failed to make a submissible case because he did not present any evidence that 1) Kansas City Southern had notice of the tie plate; 2) the tie plate was a hazardous condition; or 3) Kansas City Southern failed to take reasonable steps to remove the tie plate. The motion to amend the judgment alleged that Mr. Briggs had signed a release agreement with Kansas City Southern for $40,000 which prevented him from recovering any future lost wages, and that he had received a $450 payment from the railroad for "living expenses." Therefore, Kansas City Southern alleged that the verdict should be offset $40,-450.

The trial court granted the motion for judgment notwithstanding the verdict "for the reasons contained in the suggestions filed by counsel with the post-trial motions." The court also granted Kansas City Southern's alternative motion to reduce the judgment by $40,450.

Mr. Briggs' first point alleges that the trial court erred by granting Kansas City Southern's motion for judgment notwithstanding the verdict on the basis that he failed to produce sufficient evidence from which the jury could reasonably infer that Kansas City Southern knew or should have known of the presence of the tie plate. Mr. Briggs contends that he presented evidence to support the inference that the "tie plate had been in the ballast a sufficient period of time" so as to impart constructive notice of its presence to Kansas City Southern. His second point contends the trial court erred in entering judgment notwithstanding the verdict on the basis that there was insufficient evidence to show that the presence of the tie plate in the ballast created a hazardous condition and that Kansas City Southern was negligent in failing to remove the tie plate. Because the two points pertain to the submissibility of his FELA claim, they will be addressed together.

FELA provides that:

Every common carrier by railroad ... shall be liable in damages to any person suffering injury while he is employed by such carrier ... for such injury ... resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

. . .

45 U.S.C. § 51.

To analyze whether Mr. Briggs presented a submissible case under FELA, it is necessary to examine the history and pur-

pose of the act. In the early 1900's, railroad employees suffered among the highest accident rates in the history of this nation. *Hines v. Consolidated Rail Corp.*, 926 F.2d 262, 267 (3rd Cir.1991). The common law duty placed on railroads to protect its workers was seen as inadequate. *Rogers v. Missouri Pacific Railroad Co.*, 352 U.S. 500, 507, 77 S.Ct. 443, 449, 1 L.Ed.2d 493 (1957). Thus, in 1908, Congress enacted FELA, which imposed a "more drastic duty" for employers. *Id.* Under FELA, the railroad's duty to its employees is broader than the general common law duty of reasonable care. *Lockard v. Missouri Pacific R. Co.*, 894 F.2d 299, 303 (8th Cir.1990), cert. denied 498 U.S. 847, 111 S.Ct. 134, 112 L.Ed.2d 102 (1990); *Ackley v. Chicago and North Western Transp. Co.*, 820 F.2d 263, 267 (8th Cir.1987). The act was designed to be a broad, remedial statute, eliminating several common law tort defenses and providing liberal recovery for injured workers. *Atchison, Topeka and Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 560, 107 S.Ct. 1410, 1413, 94 L.Ed.2d 563 (1987).

■ In light of this legislative intent, the United States Supreme Court has consistently given FELA a liberal construction. *Conrail v. Gottshall*, —— U.S. ——, ——, 114 S.Ct. 2396, 2404, 129 L.Ed.2d 427 (1994); *Atchison*, 480 U.S. at 560–62, 107 S.Ct. at 1413–14. In a sequence of cases in the 1950s and 1960s, the Court expanded the act's scope of liability. *Hines*, 926 F.2d at 267. In *Rogers*, the Court held that the test of a submissible case under the act "is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." 352 U.S. at 506, 77 S.Ct. at 448. Six years later, in *Gallick v. Baltimore and Ohio Railroad Company*, 372 U.S. 108, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963), the Supreme Court adopted a more relaxed standard of causation for FELA claims, holding that a jury issue arises when there is evidence that "employer negligence had played *any* role in producing the harm." 372 U.S. at 116, 83 S.Ct. at 664. As a result of the broad construction given FELA, the standard of proof for negligence is considerably relaxed. *Sinclair v. Long Island R.R.*, 985 F.2d 74, 76 (2nd Cir.1993); *Lisek v. Norfolk and Western Ry. Co.*, 30 F.3d 823, 832 (7th Cir.1994), cert. denied —— U.S. ——, 115 S.Ct. 904, 130 L.Ed.2d 787 (1995).

■ The enactment of FELA and subsequent United States Supreme Court decisions interpreting it not only broadened the common law duty of a railroad employer, they also increased the decision-making role of the jury. *See Bailey v. Central Vermont Ry.*, 319 U.S. 350, 352, 63 S.Ct. 1062, 1064, 87 L.Ed. 1444 (1943); *Hines*, 926 F.2d at 268–69. Indeed, this preference for jury determinations is considered part of FELA's remedy. *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines*, 369 U.S. 355, 360, 82 S.Ct. 780, 784, 7 L.Ed.2d 798 (1962). The United States Supreme Court has consistently held that, in FELA actions, issues of negligence are to be resolved by the jury. *Harris v. Chesapeake and Ohio Railway Company*, 358 F.2d 11, 12–13 (7th Cir.1966). In *Bailey*, the Court stated that "[t]o deprive these workers of the benefit of a jury trial in close or doubtful cases is to take away a goodly portion of the relief which Congress has afforded them." 319 U.S. at 354, 63 S.Ct. at 1064.

■ The railroad is not required, however, to be an insurer of its employees' safety. *Inman v. Baltimore & Ohio Railroad Co.*, 361 U.S. 138, 139, 80 S.Ct. 242, 243, 4 L.Ed.2d 198 (1959). Even though FELA is liberally construed to provide recovery for injured workers, it is not a workers' compensation statute. *Conrail*, —— U.S. at ——, 114 S.Ct. at 2404. The railroad's liability is based on negligence, not simply that an accident has occurred. *Id.* To make a submissible case, the employee must present some evidence which would support a finding that the railroad was negligent and that this negligence was the proximate cause, in whole or in part, of the accident. *Tennant v. Peoria & P.U. Ry. Co.*, 321 U.S. 29, 31, 64 S.Ct. 409, 411, 88 L.Ed. 520 (1944). The evidence supporting submission must be more than a scintilla. *Brady v. Southern Ry. Co.*, 320 U.S. 476, 478, 64 S.Ct. 232, 234, 88 L.Ed. 239 (1943).

Among the responsibilities a railroad owes to its employees is a duty to exercise reasonable care to provide a safe workplace. *Lockard*, 894 F.2d at 303. This duty includes the responsibility of maintaining and inspecting its work areas. *Sinclair*, 985 F.2d at 76. A railroad breaches this duty when it knows or by reasonable care should know of a potential hazard in its workplace and fails to exercise reasonable care to inform and protect its employees. *Syverson v. Consolidated Rail Corp.*, 19 F.3d 824, 826 (2nd Cir.1994). Reasonable care is measured by the degree of care an ordinary, reasonable person would use under similar circumstances and what that person would anticipate as resulting from a particular condition. *Gallick*, 372 U.S. at 116–19, 83 S.Ct. at 665–66; *Ackley*, 820 F.2d at 267.

The duty to provide a safe workplace depends on whether a particular harm was reasonably foreseeable. *Gallick*, 372 U.S. at 116, 83 S.Ct. at 665; *Peyton v. St. Louis Southwestern Ry. Co.*, 962 F.2d 832, 833 (8th Cir.1992). To satisfy the element of foreseeability, the employee must show that the railroad had actual or constructive notice of the defective condition that caused his injury. *Sinclair*, 985 F.2d at 77. The employee must establish that: 1) the hazardous condition exists due to the negligence of an officer, employee or agent of the railroad; or 2) one of those persons had actual knowledge of the condition before the accident; or 3) the hazardous condition existed for a sufficient length of time that it may be inferred that the failure to know about it and remove it was due to the lack of reasonable care. *Brown v. Cedar Rapids and Iowa City Ry. Co.*, 650 F.2d 159, 161 (8th Cir.1981).

Mr. Briggs did not present any evidence which indicated that Kansas City Southern negligently deposited the tie plate in the ballast. Nor did he present any evidence that the railroad had actual knowledge of its presence. The issue is whether the partially embedded condition of the tie plate supports a reasonable inference that Kansas City Southern had constructive notice of the tie plate and its failure to remove the tie plate was due to want of proper care.

The Missouri Supreme Court faced a similar issue in *Wiser v. Missouri Pacific Railroad Company*, 301 S.W.2d 37 (Mo.1957). There, a railroad employee suffered a fall due to a rock embedded in the ballast of the railroad track. *Id.* at 39. The employee sued the railroad under FELA and obtained a jury verdict in his favor. On appeal, the railroad argued that the plaintiff had failed to make a submissible case, because there was insufficient evidence to support the inference that the railroad had placed the rock there or had notice of its presence.

One of the issues the Missouri Supreme Court addressed was what reasonable inference could be drawn from the position of the rock. In referring to the rock's buried condition, the Court noted that "the process of achieving that position would normally take considerable time, whether the chat was being worn away from around it, or whether it had been loose on top and was working down." *Id.* at 41. The Court held that the rock's partially embedded condition supported the inference that the rock had been present in the ballast for a sufficient length of time so as to give the railroad constructive notice of its presence. *Id. See also Sinclair*, 985 F.2d at 77 (photographs of bent trap door, taken shortly after an employee fell over it, supported a reasonable inference that the door had been in a defective condition long enough to confer upon the railroad constructive, if not actual, notice of the defect).

Here, Mr. Briggs testified that the rusty tie plate was partially embedded in the ballast, sticking upwards. Whether the tie plate had worked itself loose from a tie or had fallen off a train, it would take a considerable period of time for it to become partially buried in the ballast. The jury could reasonably infer that this elapse of time imparted constructive notice to Kansas City Southern of the presence of the tie plate.

Kansas City Southern contends the testimony that the tie plate was partially covered *after* Mr. Briggs fell over it provides no basis for the jury to reasonably infer that the tie plate was embedded *before* the incident. The railroad explains that since the ballast was "loose," the tie plate could have been lying on top of the ballast before the accident and

became partially embedded only due to the force of Mr. Briggs' weight on it as he fell. If the tie plate was lying on top of the ballast before Mr. Briggs' fall, Kansas City Southern argues that no evidence would support the inference that it had constructive notice of the tie plate, for Mr. Briggs presented no evidence which indicated how the tie plate got there or who placed it there. The "most likely explanation of the fall," Kansas City Southern argues, "is that a used tie plate fell off a passing car, worked its way loose from a tie, or was thrown into the Dalby median area by a vandal, after the area was inspected, but before Briggs arrived." According to Kansas City Southern, any determination made by the jury that the tie plate was covered before the incident would be mere speculation.

In FELA causes of actions, the jury's power to engage in inferences is significantly broader than in common law negligence suits. *Ybarra v. Burlington Northern, Inc.*, 689 F.2d 147, 149 (8th Cir.1982). The United States Supreme Court has held that under FELA, "[i]t is no answer to say that the jury's verdict involved speculation and conjecture." *Lavender v. Kurn*, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1946). If different inferences may be drawn from the facts, the jury may be compelled to use a measure of speculation and conjecture to choose the most reasonable inference. *Lavender*, 327 U.S. at 653, 66 S.Ct. at 744; *Webb v. Illinois Central Railroad Co.*, 352 U.S. 512, 515 n. 6, 77 S.Ct. 451, 454 n. 6, 1 L.Ed.2d 503 (1957). Only the complete absence of probative facts to support the verdict justifies setting it aside. *Lavender*, 327 U.S. at 653, 66 S.Ct. at 744.

Once it is determined that a reasonable basis exists for the jury to infer that Kansas City Southern had constructive notice of the tie plate, the contention that other reasonable inferences exist is of no import. "Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *Tennant*, 321 U.S. at 35, 64 S.Ct. at 412. Certainly, the jury could reasonably infer that the tie plate had been partially buried before the incident and thus had been present in the ballast long enough to impart constructive notice to Kansas City Southern. That there may be other explanations for the tie plate's buried condition does not affect the reasonableness of this conclusion.

The partially embedded condition of the tie plate also indicates that it had been in the ballast long enough to support the reasonable inference that Kansas City Southern's failure to remove it was due to want of reasonable care. *Brown*, 650 F.2d at 161. *See also Webb*, 352 U.S. at 513–16, 77 S.Ct. at 453–54 (evidence indicating that clinker over which railroad employee tripped had been in roadbed for three weeks supported inference that railroad's inspection of roadbed was inadequate). Mr. Briggs presented sufficient evidence from which a reasonable juror could infer that Kansas City Southern had constructive notice of the tie plate and the railroad's failure to remove it was due to lack of proper care.

The final issue in whether Mr. Briggs made a submissible case is whether the tie plate in the ballast was a hazardous condition. Evidence was presented that a tie plate is a fifteen-pound piece of metal, eight-and-a-half by eleven inches. At the time of the incident, the tie plate was "sticking up" from the ballast. Both Mr. Briggs and Mr. Rhue testified that a tie plate could be a "tripping hazard." Mr. Brookings, the corporate representative of Kansas City Southern, testified that he was aware the responsibilities of a conductor required him to walk in the area of the ballast where the accident occurred. Whether the discarded tie plate posed a hazard to Kansas City Southern employees was an issue for the jury.

Given the preference in FELA actions for sending cases to the jury, this court holds that the trial court's entry of judgment notwithstanding the verdict was erroneous. Because Mr. Briggs presented sufficient evidence to make a submissible case, it is necessary to review the trial court's decision to grant Kansas City Southern's alternative motion to reduce the amount of the verdict.

On July 29, 1992, almost six months before he filed his FELA claim, Mr. Briggs signed a buy-out agreement with Kansas City Southern. The document, entitled "Resignation and Release," stated that Mr. Briggs had voluntarily resigned from Kansas City Southern in consideration of $40,000. It also stated that Mr. Briggs agreed to release the railroad "from any and all employment-related claims of any nature which I may now have or have in the future, except those arising under the Federal Employers Liability Act." It further stated that the payment received by Mr. Briggs was an inducement for him to voluntarily resign and to "release employment-related rights against the Company."

Kansas City Southern's motion to amend the judgment sought a $40,000 reduction in the jury's verdict on the basis that the railroad's $40,000 payment to Mr. Briggs prevented him from receiving any additional wages or benefits from the railroad. The motion explained that Mr. Briggs' trial counsel had requested future wages and benefits in closing argument and had calculated the value of Mr. Briggs' damages, including future wages and benefits, to be $900,000. The motion alleged that failure to give Kansas City Southern a credit for the $40,000 payment would allow Mr. Briggs to receive "a double recovery and windfall." The motion also sought a $450 offset due to a payment of that amount to Mr. Briggs for living expenses. The trial court granted the alternative motion and entered an order entitling Kansas City Southern to a credit of $40,450 "on any judgment entered in favor of Plaintiff on this claim."

Mr. Briggs does not dispute the trial court's decision to grant Kansas City Southern a credit for its $450 payment. He does contest the $40,000 offset. The amount of damages awarded by the jury will be upheld if substantial evidence supports the verdict and damages were awarded on any reasonable assessment of the evidence. *Moore v. Missouri Pacific R. Co.*, 825 S.W.2d 839, 846 (Mo. banc 1992); *Dayton Const., Inc. v. Meinhardt*, 882 S.W.2d 206, 209 (Mo. App.1994). Mr. Briggs sought damages in the amount of $900,000 for loss of future earning capacity, pain and suffering, and future medical expenses. The jury returned a general verdict in favor of Mr. Briggs for $150,000. Disregarding the evidence of loss of future earning capacity, evidence of pain and suffering and future medical expenses supports the jury's verdict. Therefore, this court will not disturb the award of damages. *Moore*, 825 S.W.2d at 846.

Even if the jury awarded damages for loss of future earning capacity, this court presumes that the jury considered all the evidence in arriving at a determination of damages. *Dayton*, 882 S.W.2d at 209. In *Dayton*, this court held that the absence of an instruction to the jury to credit the defendant for certain payments was not erroneous, where evidence was presented concerning the payments. *Id.* Here, the jury heard evidence about the amount and terms of the buy-out agreement and was aware that Mr. Briggs had received $40,000 from Kansas City Southern. This court presumes that the jury took the buy-out agreement into consideration in awarding damages. *Id.* The trial court's judgment which reduced the verdict by $40,000 is reversed. As Mr. Briggs does not challenge the $450 offset, this court will affirm that portion of the trial court's judgment.

The trial court's judgment notwithstanding the verdict is reversed. The trial court's grant of the alternative motion to amend the judgment is affirmed in part and reversed in part, and the case is remanded to the trial court to enter judgment in favor of Mr. Briggs for $149,550.

All concur.