WALTON CONSTRUCTION COMPANY, Appellant–Respondent,

v.

MGM MASONRY, INC., Respondent–Appellant.

Nos. WD 63735, WD 63771.

Missouri Court of Appeals, Western District.

June 27, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 1, 2006.

Application for Transfer Denied Sept. 26, 2006.

Danne Wayne Webb, Kansas City, MO, for Appellant.

Frank F. Sallee, Molly Andrea Brown, Robert L. Wehrman, Kansas City, MO, for Respondent.

Before VICTOR C. HOWARD, P.J., JAMES M. SMART, JR., and THOMAS H. NEWTON, JJ.

JAMES M. SMART, JR., Judge.

This case involves cross-appeals arising out of a jury verdict and award of damages in favor of MGM Masonry, Inc. against Walton Construction Inc. Each party had sued the other for breach of a construction contract. Walton contends, *inter alia*, that it was reversible error for the court to refuse to poll the jury after verdicts on the parties' respective claims, and that it was prejudiced thereby because the verdicts were inconsistent. MGM, which received a purported verdict from the jury, appeals the trial court's denial of its post-trial motion for attorneys' fees and interest.

In November 2005, we reversed and remanded for a new trial. After opinion, we granted rehearing.

## Background

In July 1999, Walton was hired as the general contractor for construction of a large store in Kansas City. The project was to be constructed primarily of concrete masonry blocks. Walton subcontracted with MGM to perform the masonry work on the project. The original contract price for MGM's work was $1,257,800, to be paid in periodic installments. MGM began work on the project on August 2, 1999. The contract included various "completion dates" for different aspects of the work MGM was to perform. According to Walton, MGM failed to satisfactorily meet the contract completion dates. Beginning in October, Walton began claiming that MGM was failing to perform under the contract, and began withholding amounts due MGM under the contract. Ultimately, Walton withheld the sum of $242,384.

Walton filed a breach of contract lawsuit against MGM. The petition alleged that MGM's failure to perform according to the contract caused Walton to incur costs and expenses. Walton also alleged that MGM failed to protect and indemnify it from liens or claims from its suppliers, as required by the contract. Walton sought indemnification for over $90,000 in unpaid invoices from the material supplier. Walton also sought reimbursement for costs, expenses, and attorneys' fees, pursuant to the contract.

MGM brought a counterclaim against Walton, alleging that Walton had first breached the contract by failing to properly manage the project and by failing to make timely payments due it under the contract. MGM sought damages in excess

of $350,000, consisting of the unpaid contract balance plus additional damages MGM claimed as a result of Walton's other breaches.

## Proceedings at Trial

The case proceeded to trial before a jury in September 2003. Walton's position at trial was that MGM had breached the contract by failing to timely perform its work under the contract. Walton presented evidence that this failure caused it to incur additional costs and expenses in order to finish the project on time. Walton also presented evidence that it had satisfied $70,000 in supplier invoices and sought reimbursement from MGM for that.

MGM sought to prove at trial that Walton had breached the contract by withholding $242,384 in payments due under the contract and by mismanaging the project, which caused $92,898 in additional damages to MGM.

MGM presented evidence that Walton mismanaged the project by, *inter alia*, failing to properly coordinate the work at the construction site, allowing conflicts and interference with MGM's work, and inconsistently redirecting MGM's work. MGM claimed that Walton did not have sufficient footings available at the start of the project for MGM to install the material. MGM asserted that its delay in getting the colored blocks delivered was due in part to Walton's failure to provide MGM timely written confirmation of the contract, and in part to the contract's requirement that MGM use Midwest Block & Brick as the supplier. MGM presented evidence of other failures by Walton, which need not be detailed here.

At the instruction conference, the parties proposed one set of instructions for Walton's claim against MGM and a separate set of instructions for MGM's counterclaim against Walton. The jury was given two separate verdict forms: Verdict A on Walton's claim against MGM, and Verdict B on MGM's counterclaim. Instruction 5 informed the jury: "*Nine or more of you must agree in order to return any verdict. A verdict must be signed by each juror who agrees to it.*" (Emphasis added.)

The claims were submitted to the jury with the following pertinent instructions. On Walton's claim, the verdict director (which directed resolution on Verdict A) directed the jury:

Your verdict must be for plaintiff Walton Construction Company, Inc. [ ] if you believe:

First, Walton and defendant MGM Masonry, Inc. [ ] entered into an agreement whereby Walton and MGM agreed to perform their respective duties and obligations as described in subcontract documents for the Home Depot project, and

Second, Walton performed its agreement, and

Third, MGM failed to perform its agreement, and

Fourth, Walton was thereby damaged.

On MGM's counterclaim, the verdict director (which directed resolution on Verdict B) instructed the jury:

Your verdict must be for defendant MGM Masonry, Inc. [ ] if you believe:

First, MGM and plaintiff Walton Construction Company, Inc. [ ] entered into an agreement whereby MGM and Walton agreed to perform their respective duties and obligations as described in the subcontract documents for the Home Depot project, and

Second, MGM substantially performed its agreement, or was prevented from performing its agreement, and

Third, Walton failed to perform its agreement, and

Fourth, MGM was thereby damaged.

The jury found in favor of MGM on Walton's breach of contract claim (Verdict A). The jury also found in favor of MGM and against Walton on MGM's counterclaim (Verdict B), and assessed damages at "$242,384, plus interest, plus $12,030." Both verdict forms were signed by nine jurors. Juror Janner, the foreman, had signed verdict B in favor of MGM, but did not sign verdict A. Juror Shockley had signed verdict A, but not verdict B. The judge read the verdicts in open court within the hearing of the jury. He noted that verdict A was signed by nine jurors and stated that it appeared to be in proper form. He made the same statement with regard to verdict B.

Counsel for Walton requested that the jury be polled. The court refused, believing that the right to poll juries was applicable only in criminal cases. The judge then discharged the jury. After the jury was discharged, the judge, the attorneys, and the parties became aware that the two verdicts were not signed by the same nine jurors.

Walton moved for judgment notwithstanding the verdict or alternatively for new trial. The court denied the motion, concluding that the verdicts were not inconsistent, and that nothing would have been gained by polling the jury. MGM maintained the verdicts were not inconsistent and opposed the new trial motion.

The judgment did not include an amount for interest or for attorneys' fees as MGM had requested under section 431.180. MGM filed a post-trial Motion to Amend Judgment to Include Interest and Attorney Fees. The trial court also denied that motion.

Judgment was entered in favor of MGM in the total amount of $254,414, with no award of attorney's fees or interest. Both parties appeal. The appeals have been consolidated.

## Denial of Right to Poll

Walton argues, *inter alia,* that the court should have awarded it a new trial because the verdicts were inconsistent and that it had an absolute right to poll the jury, which the court erroneously denied. Because these assertions are interrelated, we will consider them together.

■ Although it may be more common to associate with criminal cases the right to poll a jury, each party in a civil case also has that right. *Poulson v. Collier,* 18 Mo. App. 583, 603 (Mo.App.1885). The procedural right to poll a jury surely has a purpose—and we would suppose that the right to poll is properly invoked whenever a party has a concern, even if based only on a hunch, that one or more jurors may not have actually intended or desired to vote as the verdict form indicates. There is no statute or court rule addressing the polling of civil juries. However, the right to poll a civil jury has long existed in Missouri. *See St. Louis County v. Pennington,* 830 S.W.2d 553, 555 (Mo.App. 1992).

Walton argues that it was reversible error for the court to refuse to poll the jury, with or without a showing of prejudice. Walton contends that a showing of prejudice should not be required, despite the apparent holding in *Pennington. See id.* at 555–56 (held that even if error occurred when trial judge refused request to poll jury in a condemnation action, reversal was not required absent evidence of substantial prejudice). Walton also argues, however, that even if prejudice is required for reversal, such prejudice is present here. Had the jury been polled, Walton says, it would have either demonstrated the inherent inconsistencies in the verdicts or it would have revealed that one or more

of the jurors did not intend the result reached. MGM disagrees, saying there was no need for a poll because there was no inconsistency. MGM also now on rehearing suggests that if this court believes there was an apparent inconsistency, the case should be remanded to allow MGM to present juror evidence to clarify and uphold the verdict.[1]

## Juror Signatures

Three-fourths or more of a jury in a civil case must agree on the verdict, unless the parties agree otherwise. Mo. CONST. art. I, § 22(a); § 494.490, RSMo 2000. All verdicts shall be signed by *each* juror who agrees to the verdict. § 494.490. The Missouri Approved Instructions also make clear this requirement. *See* MAI No. 2.04. Here, in verdict A, nine jurors professed to find in favor of MGM on Walton's claim. In verdict B, nine jurors also indicated a finding in favor of MGM. There is no facial inconsistency here. However, only eight of the jurors were the same on both verdicts. Juror Shockley signed verdict A (which was against Walton on Walton's claim), while juror Janner did not. Juror Shockley did not sign verdict B (which was in favor of MGM on MGM's claim), while juror Janner did.

## The Apparent Inconsistency

Shockley could have believed Walton did not prove its case, and could also have believed MGM did not prove its case. Therefore, we see no inconsistency in Shockley's respective votes. Juror Janner, on the other hand, who did not sign verdict A, is presumed to have believed that Walton proved *its* claim of breach against MGM; and yet, by signing verdict B, Janner agreed that MGM proved *its*

claim of breach against Walton. In order to find in favor of Walton on its claim, he had to believe Walton did *not* breach the contract, while to find in favor of MGM on the counterclaim, he had to believe Walton *did* breach the contract. Hence, the apparent logical inconsistency exists with juror Janner. It cannot be said categorically that nine jurors (as opposed to merely eight) agreed with verdict B. It is not clear that nine jurors actually agreed both that Walton breached the contract and that MGM did not.

■ "In any case upon the appearance of any uncertainty or contingency in a jury's verdict, it is the duty of the trial judge to resolve that doubt. . . ." *State v. Thompson*, 85 S.W.3d 635, 639 (Mo. banc 2002). An apparent inconsistency occurred in *State ex rel. Boyer v. Perigo*, 979 S.W.2d 953, 954 (Mo.App.1998). There the jury returned verdicts for plaintiffs against two defendants. Nine jurors signed the form indicating that each of the two defendants were liable, but only seven of the signatures applicable to the two defendants were the same. *Id.* at 954–55. Nine jurors also signed the form indicating their desire to award damages to the plaintiffs, but only seven of the signatures were the same as to the liability of both defendants and the awarding of damages. *Id.* at 955. The trial court accepted the verdicts. *Id.* Ultimately, this court held that the jury verdict was invalid, holding that it was necessary that the same nine jurors must agree on both liability and damages as to each defendant. *Id.* at 957.

In *Boyer*, the same nine had to agree on both liability and damages. In this case, logically, nine or more jurors had to agree both that Walton did breach the contract

---

1. On motion for rehearing, MGM presented to this court an affidavit from a juror which MGM believes would clarify the discrepancy concerning the juror signatures discussed herein.

and that MGM did not. MGM argues that this case is different because nine jurors signed in favor of MGM on each of the separate claims. That is correct. However, we are not required to be oblivious to the signatures. It is by comparing the signatures on the two verdicts that the inconsistency emerges, just as the inconsistency emerged in *Boyer* when the signatures were compared. Here we have one case, with one contract, with a claim and a counterclaim clearly intertwined, and the same jury. It is not a matter of different contracts, or of claims tried to different juries at different times. We have one jury that reached results involving an apparently illogical inconsistency between claim and counterclaim.

MGM makes no argument, in order to retain its verdict against Walton, that the inconsistency in signatures can be accounted for on the basis of different opinions about damages. Also, it is very clear from the record that there was no dispute at all about the *fact* of damage as to each claim.

We mentioned in our initial opinion in this case that if there had been a jury poll, juror Janner might have stated that he agreed with verdict A also, but did not sign verdict A in the jury room because, after seeing that there were nine others who signed, and knowing that nine was sufficient for a verdict, he simply forgot about the specific instruction that *all* who agree with a verdict must sign. If such an explanation had emerged pursuant to a poll of the jury, the court and the parties could have seen that the apparent inconsistency was not in fact an inconsistency because there were in fact nine votes for verdict B. MGM now indicates, and supplies an affidavit to support the assertion, that juror Janner would indeed confirm that that is exactly what happened in this case. MGM maintains that this information eliminates any concern about the signature discrepancy and shows that the verdict was not inconsistent.

■ This matter could have been clarified while the case remained in the trial court during the post-trial phase. Where there is an inconsistent or ambiguous verdict, the trial judge should attempt to resolve the matter. *See Thompson,* 85 S.W.3d at 639; *State v. Peters,* 855 S.W.2d 345, 348 (Mo. banc 1993); *State v. Griffin,* 28 S.W.3d 480, 482 (Mo.App.2000). "The trial court can resolve inconsistencies or ambiguities by returning the jury to further deliberations or by polling the jury." *Thompson,* 85 S.W.3d at 639.

■ Also, even after the jury is discharged, the court can receive evidence (including affidavits from jurors) to explain it and uphold it, although not to contradict it or destroy it. *See Jordan v. St. Joseph Ry., Light, Heat & Power Co.,* 335 Mo. 319, 73 S.W.2d 205, 210 (1934); *Hays v. Hogan,* 273 Mo. 1, 200 S.W. 286, 293–94 (1917). "[T]he amendment of a verdict which is ambiguous on its face or in light of the record is not considered a direct impeachment...." *Lyon v. J.E. Dunn Constr. Co.,* 693 S.W.2d 169, 173 (Mo.App. 1985) (*citing Elmore v. Owens–Ill., Inc.,* 673 S.W.2d 434, 439 (Mo. banc 1984); *Hays,* 273 Mo. 1, 200 S.W. 286). In this case, evidence from a juror explaining the fact that there was no real inconsistency would not have been an impeachment, but would have been evidence to uphold it. When Walton's post-trial motion brought the apparent inconsistency in the verdicts to the court's attention, the court had the opportunity at that time to solicit affidavits or to conduct a hearing and to call one or more jurors to testify, but the court did not perceive the apparent inconsistency. Nor did MGM at that time request an opportunity to present evidence to uphold the verdict.

■ Walton argues, in any event, that the failure to poll the jury upon proper request is *per se* reversible error, even in a civil case. Walton thus contends that, even if there were no inconsistency in the verdicts, a new trial must be ordered. That issue was addressed by the Eastern District of this court in *Pennington,* 830 S.W.2d at 555–56. In *Pennington,* in which landowners were awarded $50,000 in a condemnation action, the landowners, who had sought a higher award, contended that the court erred in denying a request to poll the jury. *Id.* at 554–55. The court, after examining the history of jury polling and after reaffirming the right of either party to poll a jury in a civil case, held that reversal was not required where a refusal was not shown to be prejudicial. *Id.* at 555–56. Accordingly, we are not persuaded by Walton's argument that a failure to poll the jury upon request is *per se* reversible error in a civil case.

■■ Although the court erred in failing to poll the jury in this case, the only evidence of any prejudice from that failure is the discrepancy in the signatures. MGM now seeks by juror affidavit to explain the discrepancy. MGM is extremely late in presenting the juror affidavit, and can be faulted accordingly. However, because of our commitment to honor and uphold a proper jury verdict if in fact there is one, we entertain the possibility of remand for clarification of the discrepancy.

While we have not been able to find precedent for the notion that a court should consider juror testimony to explain and uphold a verdict when the request for such an endeavor is filed this late in the process, we do find abundant authority for the after-judgment receipt of juror evidence, even by way of affidavit, to uphold a verdict that appears to have a discrepancy or an ambiguity. We see no inherent legal principle that would bar, even at this late date, while the case remains in our court, our directing the receipt of evidence that could clarify the signature issue. In the interests of judicial economy, we do wish to save the jury's verdicts if indeed the verdicts represent the jury's actual intention. In *Jordan, supra,* an affidavit from a juror explaining an alleged ambiguity was properly considered by the trial court after verdict. 73 S.W.2d at 210. Also, in *Hays, supra,* it was held that the court could properly consider affidavits from jurors after the verdict and the jury discharge, where the affidavits merely explained the ambiguity and did not contradict or impeach the verdict. 200 S.W. at 293–94. The trial court must, of course, exercise caution in considering such evidence in view of the substantial time that has elapsed since the verdict. Nevertheless, we conclude that the law does not preclude, even at this point, the trial court from considering such evidence in an effort to see if the discrepancy can be sufficiently explained to eliminate any doubt about the verdict.

Because any attempt to evaluate such evidence should not take place in this court, we will vacate the jury's verdicts due to the earlier failure of the trial court to poll the jury or otherwise address the discrepancy. We will, however, remand to allow the trial court to receive evidence to uphold the verdict. If the trial court, on remand, is satisfied that juror Janner's evidence completely explains and cures any discrepancy, then the court is to reinstate the verdict on the claim and counterclaim. If the court is not satisfied that the testimony supports and upholds the apparent verdict, the court should order a new trial as to both jury-tried claims.

We emphasize that the unusual step we take in this case in allowing the trial court to consider juror evidence is limited to considering such evidence only to uphold,

not to attack, the apparent verdict. This is a case in which the irregularity was slight enough that it was not even noticed at the time the verdict was accepted. There was a proper request to poll the jury, which was denied; and it appears that if the poll had been conducted the discrepancy could have been clarified.

### Other Points on Appeal

▮▮▮▮ We have already implicitly ruled that MGM made a submissible case in its counterclaim for breach of contract; Walton's point to that effect is denied. Walton also argues that there is error in that the jury failed to allow Walton a $70,000 credit against the amount sought by MGM. Walton points out that the $70,000 credit (for payments made to the supplier) was not disputed. Therefore, says Walton, the trial court erred in failing to adjust the verdict to reflect the credit. The problem, however, as MGM points out, is that Walton cannot demonstrate that the jury actually erred in its calculation. The presumption is that the jury intended the exact amount it entered for the verdict, even after taking into account the credit. The jury's assessment of damages will not be reversed if there is substantial evidence to support that verdict and "[i]f the damages were returned on any rational assessment of the evidence." *Moore v. Mo., Pac. R.R. Co.*, 825 S.W.2d 839, 846 (Mo. banc 1992). This court presumes that the jury considered all the evidence in arriving at a determination of damages. *Briggs v. Kansas City S. Ry. Co.*, 925 S.W.2d 908, 916 (Mo.App.1996).

Walton, in order to demonstrate error, must show that the evidence necessarily demonstrates that a mistake was made. This would ordinarily be done by showing that the jury could not, based on the evidence presented, have possibly reached the figure it did without making an error.

This was not a case in which the amount of MGM's alleged damages was undisputed. It is true that there was no dispute about the amount Walton had withheld from MGM. But it is also true that MGM also claimed over $90,000 in additional damages. MGM offers a rational suggestion as to how the jury could have reached the amount in question, in view of the disputed damages. MGM offers the reasonable suggestion that the jury might have, for instance, allowed MGM $82,000 of its claim for an additional $92,898 and then deducted the $70,000 credit, because the award was roughly $12,000 more than the $242,384 that Walton had withheld. In any event, the verdict was within the range of the evidence. Walton thus fails to show that the court had any duty to adjust the verdict. Indeed, we assume the court would have erred had it done so.

▮▮▮ MGM raises points that relate to the trial court's denial of interest and attorneys' fees under the Private Prompt Pay Act. The parties agreed prior to the case being submitted that the issue of interest and attorney's fees, pursuant to section 431.180, the Private Prompt Pay Act, would be for the court rather than the jury. Subsection 2 of that statute provides that "a court *'may* [,] in addition to any other award for damages, award interest ... from the date payment was due pursuant to the terms of the contract, and reasonable attorney fees, to the prevailing party'." *Vance Bros., Inc. v. Obermiller Constr. Servs., Inc.*, 181 S.W.3d 562, 564 (Mo. banc 2006) (emphasis in original). The statute places discretion in the court to award interest and attorney fees. *See id.*

The trial court did not import a "good faith" requirement into the statute, as MGM suggests; rather, the court simply exercised its discretion, for the reasons set forth in the judgment:

Here, Walton Construction Company, Inc. was not unreasonable in withholding payment. MGM contributed greatly to Walton's decision to withhold payment. There were many times when MGM could have been more cooperative and conciliatory and resolved some of the issues in this case. There was a legitimate dispute here of what was owed and who owed it. That being the case, it is not appropriate to give MGM additional money.

MGM next argues that there was no evidence supporting the court's conclusions. We review this issue according to an abuse of discretion standard. *Vance Bros., Inc.*, 181 S.W.3d at 564. To show that the trial court abused its discretion the complaining party has the burden to show that the order is against the logic of the circumstances and is arbitrary and unreasonable. *Anglim v. Mo. Pac. R.R. Co.*, 832 S.W.2d 298, 303 (Mo. banc 1992). MGM does not meet this burden. Without going into detail, we hold that there was evidence in this case from which the court could have reached the conclusion it did without committing an abuse of discretion.

In its final point, MGM says the court erred in refusing its request after the verdict to amend the judgment to include interest in accordance with the jury's recommendation. MGM now wishes to seek general pre-judgment interest under section 408.020, RSMo. MGM's prayer, however, was for interest under section 431.180 (the Prompt Pay Act). Although the jury's verdict specifically stated that MGM was entitled to damages "plus interest," the issue of interest was never submitted to the jury. The jury's view on the matter of interest is immaterial because the parties had agreed to submit those matters to the court. The jury's purported "award of interest" was a nullity. The trial court did not err in this regard.

## Conclusion

The judgment as to the jury verdicts on the opposing contract claims is vacated, and the case is remanded for further proceedings as to those claims. The judgment is affirmed in all other respects. The remand will permit the trial court to receive testimony from juror Janner as to the absence of his signature in the appropriate place on verdict form A. If the court is satisfied that such evidence upholds the original verdicts, the court shall reinstate the original verdicts and enter judgment accordingly. Otherwise, in view of the earlier failure to poll the jury or otherwise address the discrepancy, the court shall order a new trial as to the jury-tried claims. Each party shall bear its own costs as to this appeal.

NEWTON and HOWARD, JJ., concur.